646 A.2d 1246

**Debra A. KELLOGG**

v.

**Laurie L. KELLOGG, Linda Francis, and Edward W. Francis.**

**Appeal of Linda FRANCIS and Edward W. Francis.**

Superior Court of Pennsylvania.

Submitted Dec. 20, 1993.

Filed Aug. 31, 1994.

Richard E. Connell, Harrisburg, for appellants.

Maria P. Cognetti, Harrisburg, for Debra A. Kellogg, appellee.

Laurie L. Kellogg, appellee, pro se.

Before BECK, KELLY and JOHNSON, JJ.

584

BECK, Judge:

This appeal addresses the requirements for standing of a non-custodial third party vis-a-vis other third parties who have legal and physical custody of the children.

Debra (Debra) and Bruce (Bruce) Kellogg married sometime in the 1970s and had two children, Kevin, now age 19, and Kelly, now age 14. In 1987 the couple divorced and entered into a shared custody arrangement whereby each ex-spouse had custody of Kevin and Kelly for six months a year. After the divorce, Bruce married Laurie Kellogg (Laurie), with whom he also had two children, Kyle, now age 5, and Kristopher, now age 4 ("the boys"). Because Kevin and Kelly spent significant amounts of time in their father's home, they developed a close relationship with the boys, their younger half-brothers.

In June, 1991 Laurie had her husband Bruce killed. Shortly after Laurie's arrest, Laurie's mother, Linda Francis, and stepfather, Edward Francis (the Francises), moved for custody of the boys. With Laurie's consent, the Francises were awarded legal and physical custody of the boys. Laurie was convicted of Bruce's murder and sentenced to 25 years to life in prison. In September, 1992, Debra filed a complaint for custody alleging that the Francises were not appropriate substitute parents for the boys and that they were improperly preventing the boys from maintaining a relationship with her children, the boys' half-siblings.

After hearing the testimony of the parties and a court-appointed psychologist who interviewed Debra, the Francises, and all four children involved, the trial court continued primary custody in the Francises and awarded visitation to Debra. It is clear from the record, specifically the psychologist's reports, that the Francises were attempting to erase the memory of Bruce from the boys' lives as well as keep the boys away from their extended family. At all times during this action, the Francises have insisted that Debra does not have standing to seek custody of the boys. The trial court disa-

greed, and the Francises now appeal the trial judge's order solely on the standing issue.

In her petition Debra, the appellee, complained that the Francises took the boys to the courthouse for their mother's sentencing and held up signs calling for Laurie's release; that the Francises permitted the boys to speak on the telephone to the confessed killer of their father; that the Francises cut off contact between the boys and their half-siblings, and that the grandmother, Linda Francis, was heard telling the boys that their father "deserved to die." The psychologist's report supported Debra's allegations and the trial court found them to be true.

In addition, the trial court specifically found that the grandmother, Linda Francis, was "unimpressive" and that Debra should have custody of the boys. In its opinion, the trial court noted that Linda Francis's parenting skills were called into question and that the Social Security benefits the boys receive monthly, $1,020.00, were a factor in the Francises' fight for custody. However, the court felt compelled to continue custody in the Francises because the psychologist believed that moving the boys might cause them emotional distress. It is evident from the record and his opinion that the trial judge carefully weighed the various alternatives in this case and treated the matter with great concern.

The psychologist recommended that Debra be awarded visitation in light of the psychological importance to the boys of the ongoing relationship to the deceased father's family. The psychologist pointed out that without court intervention the Francises were incapable of fostering such a relationship. The psychologist also stated that the Francises' attitude toward the boys' father and the Kellogg family was not in the children's best interest.

While the merits of Debra's claim for custody may be compelling, we must focus on whether she had standing to assert custody rights in court.

The question of standing is rooted in the notion that for a party to maintain a challenge to an official order or action,

he must be aggrieved in that his rights have been invaded or infringed. The law of standing provides that one cannot evoke the jurisdiction of the court to enforce private rights or to maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal right, title or interest in the subject matter or controversy.

*Jackson v. Garland,* 424 Pa.Super. 378, 622 A.2d 969, 971 (1993). "An aggrieved party is one who has a direct, immediate, pecuniary and substantial interest in the subject matter of the litigation." *Insilco Corp. v. Rayburn,* 374 Pa.Super. 362, 372, 543 A.2d 120 (1988).[1]

In *Jackson v. Garland, supra,* the primary case upon which the Francises rely, a maternal aunt sought partial custody of her deceased sister's child. Her petition was opposed by the natural father, who had legal custody of the children although he was incarcerated for killing the natural mother, and the paternal grandparents who had physical custody of the child. A panel of this court found that the maternal aunt lacked standing to proceed. *Id.* at 382, 622 A.2d at 971.

*Jackson,*[2] while similar, is not dispositive of the instant case. *Jackson* involved the rights of a natural father who had legal custody versus the rights of a third party, the maternal aunt. In the instant case the controversy is between two third parties, the grandparents and Debra, the appellee. Here the biological mother has neither legal nor physical custody of the

1. In cases involving child custody the traditional principles of standing are modified. The standing analysis considers the relationship of the parties asserting standing. Thus, a third party may have standing vis-a-vis another third party but may not have standing vis-a-vis a natural parent. *See Gradwell v. Strausser,* 416 Pa.Super. 118, 610 A.2d 999 (1992) (third parties lack standing to seek custody against natural parents absent a finding of *loco parentis*). *See also Rosado v. Diaz,* 425 Pa.Super. 155, 624 A.2d 193 (1993).

2. The *Jackson* court concluded that, where a parent is deceased, standing to seek custody of that parent's children is accorded only to lineal ascendents. However, the *Jackson* holding is limited to third parties asserting custody against a natural parent. The broad language relating to standing in *Jackson* is dicta except as it applies to a third party asserting rights against a natural parent.

boys and has not responded in any manner to the complaint for custody. We find that these material factual differences make the *Jackson* case inapposite.

The Francises argue that they are not third parties and that they should be treated as natural parents because they stand in *loco parentis* to the boys and have assumed parental responsibilities for them [3]. As natural parents, they argue, they cannot be subject to a complaint for custody by Debra under *Gradwell v. Strausser, supra.* We reject this interpretation of the law. *Loco parentis* status can accord a person standing, *see Gradwell, supra,* but the person remains a third party. We can find no authority for the proposition that *loco parentis* status serves to elevate a third party to natural parent status. We therefore reject the argument in support of granting caretakers like the Francises the rights of natural parents.

In Pennsylvania we find no precedential case or statute addressing directly the standing of a third party seeking custody as against another third party, a non-parent who has both legal and physical custody.[4] Although we begin with the presumption that in custody matters one third party may have standing vis-a-vis another third party, we do not hold that all third parties have standing vis-a-vis other third parties. We hold that for a third party to be accorded standing he or she must prove by clear and convincing evidence that he or she has shown a sustained, substantial and

---

**3.** As previously noted, Bruce, the natural father, is deceased. Laurie, the natural mother, is incarcerated for his murder. While Laurie initially was made a defendant to the case, she has not responded to the complaint nor has she or her representative appeared before the court to present a position. The Francises alone, as legal and physical custodians, have defended the matter from its inception.

**4.** Research reveals that there are cases wherein a third party has sought custody of a child who is in the custody of another third party. In *In Interest of Tremayne Quame Idress R.,* 286 Pa.Super. 480, 429 A.2d 40 (1981), a foster mother and maternal grandmother both sought custody of a child. The trial court ruled that the foster mother should be awarded custody and a panel of this court found no abuse of discretion in that decision and affirmed. While the court discussed the "equally allocated burden of proof" in a custody dispute between two third parties, it did not address the standing issue.

sincere interest in the welfare of the child. The standard we establish protects a child from custody claims by third parties who have not evidenced a strong personal investment in the child. The law cannot expose children who are properly placed in a third party's custody to potential frivolous custody claims, making their lives vulnerable to disruption and instability. A law suit, even an unsuccessful one, creates an unhealthy environment for a child. Therefore, a third party seeking custody must show more than a passing interest in the child. The petitioner, in order to be awarded standing, must prove by clear and convincing evidence that he or she has shown a sustained, substantial and sincere interest in the welfare of the child.[5]

■ We are mindful that merely establishing this new standard in the custody arena does not provide litigants or the trial courts with sufficient guidance on how the issue is to be raised, considered or ultimately determined. Generally, a party to a civil suit raises a claim that an opposing party has no capacity to sue by way of preliminary objection. *See* Pa.R.C.P. 1028(a)(5). While the rules specific to custody matters do not address the procedure to be followed in a standing challenge, the rules do address the filing of preliminary objections when a question of venue or jurisdiction arises. Pa.R.C.P. 1915.5 provides that a party to a custody action must raise a question of jurisdiction or venue within twenty days of service of the complaint or at the time of the hearing, whichever first occurs.

■ Like jurisdiction, we believe a standing challenge should be raised within the time period set forth in Rule 1915.5 so as to give a defendant notice of the other party's intention to object to the action on this ground. Since resolution of the standing issue has the potential to control the outcome of the entire case without the court ever reaching the merits, it is important that the issue be raised as early as possible.

5. Granting a party standing merely gives the party a personal interest in the procedure and outcome of the litigation and in no way implicates the ultimate merits of the case.

 However, Rule 1915.5 also explicitly states that the filing of a preliminary objection shall not delay the custody hearing. It is clear from this rule and others that custody actions are to be resolved as promptly as possible. *See e.g.,* Pa.R.C.P. 1915.10(b) (no post-trial litigation required in custody actions). In keeping with this goal, we believe it is best that standing challenges serve in no way to delay a custody matter. The custody hearing should proceed as scheduled despite the filing of a preliminary objection based on lack of standing.

Once a hearing has commenced, a trial court may make the standing determination at any time, depending on the particular facts and circumstances before it. For instance, it may become clear to the trial judge rather quickly that the person seeking custody is a virtual stranger to the child or children at issue. In that case, it would be appropriate for the trial judge to deny standing to that party promptly. On the other hand, the evidence of a party's sincere, substantial and sustained interest in a child also may be the best evidence that the party is entitled to custody. In such a case, it would be appropriate for the trial court to allow the entire custody hearing to proceed and to make his or her ruling on the standing issue at the hearing's end. A trial judge always has been accorded the discretion of determining the order of evidence in any particular case; we see no reason to disturb that discretion, particularly since the facts and circumstances of these types of cases greatly vary from one matter to another.

 Once the trial court determination is made, it will be reviewed by this court in the same manner that we review any such determination, that is, under an abuse of discretion or error of law standard. As with all rulings made by a trial court, the decision can be reviewed by an appellate court through careful analysis of the evidence of record.

 The question becomes then, whether the evidence here was sufficient to establish that Debra showed a sincere and sustained interest in the boys. The record reveals that she did. She sought to foster a healthy relationship between

the boys and her own children, despite the fact that she was divorced from Bruce, their father. She saw the boys on a regular basis when picking up her own children after school. She played with the boys in their home on a regular basis. Debra's testimony regarding her relationship with the boys, which was credited by the court, supports a finding by clear and convincing evidence that she has always shown and continues to show a genuine interest in the welfare of these children. It was indeed proper, therefore, for the trial court to accord Debra standing in this custody action.

Order affirmed.