658 A.2d 1343

**Mary MacDONALD, Appellee,**

v.

**Patricia QUAGLIA, Appellant.**

Superior Court of Pennsylvania.

Argued March 2, 1995.

Filed May 18, 1995.

150

Paul Masciantonio, Philadelphia, for appellant.

Ira L. Mazer, Philadelphia, for appellee.

Before ROWLEY, P.J., and CAVANAUGH and McEWEN, JJ.

ROWLEY, President Judge:

Patricia Quaglia appeals from the Order entered in the Court of Common Pleas of Philadelphia County granting Mary MacDonald's petition for visitation. We affirm.

The child in issue in this case, Francis Latham, was born on June 10, 1989 to Patricia Latham. Patricia Latham, Mother, died in an automobile accident and Father's whereabouts are unknown. Patricia Quaglia, Maternal Grandmother, was given custody of the child on September 25, 1991. Maternal Grandmother had denied Mary MacDonald's requests to visit with Child after Mother's death. Mary MacDonald, Cousin, filed a petition for visitation with child. Cousin was granted visitation with Child on alternating Saturdays from 10:00 a.m. to 5:00 p.m. It is from this order that Maternal Grandmother appeals. The following issues are raised for our consideration.

(1) Did the trial court err in determining that appellee has standing to seek visitation with the child?

(2) Did the trial court err in determining that it is in the best interest of the child to have visitation with the child?

Maternal Grandmother first contends that Cousin, a noncustodial third party, lacked standing to seek visitation. We look to the analysis of this Court in *Kellogg v. Kellogg*, 435

Pa.Super. 581, 646 A.2d 1246 (1994), for resolution of this issue.

Although we begin with the presumption that in custody matters one third party may have standing vis-a-vis another third party, we do not hold that all third parties have standing vis-a-vis other third parties. We hold that for a third party to be accorded standing he or she must prove by clear and convincing evidence that he or she has shown a sustained, substantial and sincere interest in the welfare of the child.

*Id.* at 587–88, 646 A.2d at 1249. Once a determination is made that a party has standing, we will review the decision under an abuse of discretion or error of law standard. *Id.* at 588, 646 A.2d at 1250.[1]

■ In order to determine whether the evidence in the instant case was sufficient to establish that Cousin had shown a sincere and sustained interest in the child we must look to the record. The record reveals that she did. The trial court found that Cousin and Mother were raised in the same household.[2] Cousin considered herself to be a sister to Mother and an aunt to Child. Cousin testified that she had frequent contact with Child until four days before Mother

---

1. We must note that our Court had declined to give standing to a third party where to do so would interfere with the rights of a natural parent or an intact family. Noting that the legislature has specified those circumstances where intrusion is warranted, e.g., 42 Pa.C.S. §§ 6351, 6352 (dependency proceedings); 23 Pa.C.S. § 2511 (involuntary termination of parental rights); 23 Pa.C.S. § 6301 *et seq.* (taking an abused child into protective custody); 23 Pa.C.S. §§ 5311–5313 (grandparent's visitation); 23 Pa.C.S. § 5301 *et seq.* (custody and visitation rights between parents in a divorce action), the Court concluded that the legislature intended to restrict the right of action for partial custody or visitation to lineal ascendants. *Jackson v. Garland,* 424 Pa.Super. 378, 622 A.2d 969 (1993). The instant case is not controlled by the holding in *Jackson.* The dispute here is between two third parties. As this Court noted in *Kellogg v. Kellogg,* 435 Pa.Super. 581, 587 n. 2, 646 A.2d 1246, 1249 n. 2 (1994), "The broad language relating to standing in *Jackson* is dicta except as it applied to a third party asserting rights against a natural parent."

2. Shortly after Mother was born, Maternal Grandmother and Maternal Grandfather separated. Mother was raised by her Aunt, along with Mary MacDonald, her cousin. Mother did not see Maternal Grandmother again until Mother was twenty-four years old.

died. Cousin further testified that contact was prevented because Maternal Grandmother did not want to associate with Mary's family.[3] The trial court found that Cousin had a strong interest in Child so as to give her standing to seek visitation. We concur. *Kellogg, supra.* Therefore, we find no abuse of discretion. *Id.*

Next, Maternal Grandmother contends that the trial court erred in its determination that it is in the best interests of Child to have visitation with Cousin. The trial court granted visitation on alternating Saturdays, from 10:00 a.m. to 5:00 p.m.[4] It is well established that in a visitation case, the

**3.** It is well established that:

[a] custodial parent's suspicion of or animosity towards another parent or a third party seeking visitation should not alone warrant denial of visitation; otherwise the custodial parent could always effectively deny visitation simply by testifying to suspicion or animosity.

*Commonwealth ex rel. Williams v. Miller,* 254 Pa.Super. 227, 232, 385 A.2d 992, 995 (1978). *See also Scott v. Scott,* 240 Pa.Super. 65, 368 A.2d 288 (1976).

**4.** Cousin testified that she only wanted the right of visitation with Child. Maternal Grandmother testified that she did not want Cousin to interfere with her control over Child. She did not want Cousin to attempt to change the way she would raise Child. Although the order of the trial court permits Cousin to pick up and return child to the home of Maternal Grandmother, the order can be construed as a visitation order. "The distinguishing factors between visitation and partial custody are the length, frequency, and place of visits and who has effective control of the child during the visits." *Bucci v. Bucci,* 351 Pa.Super. 457, 467, 506 A.2d 438, 443 (1986). Where the visits are of short duration, the order could be construed as one for visitation. *Id.* Alternatively, even if the order is construed as an order for partial custody, this does not invoke Cousin's authority to make any decisions regarding the child's life. 23 Pa.C.S.A. § 5302 defines the pertinent terms as follows:

"Legal custody." The legal right to make major decisions affecting the best interest of a minor child, including, but not limited to, medical, religious and educational decisions.

"Partial custody." The right to take possession of a child away from the custodial parent for a certain period of time.

"Visitation." The right to visit a child. The term does not include the right to remove a child from the custodial parent's control.

It should also be noted that counsel for Maternal Grandmother did indicate to the court that there would be no objection to a visitation order "once a month, Saturday mornings, for that family—Francis to

burden is on the third party to show only that it is in the child's best interest to give some time to the third party. *Bucci v. Bucci,* 351 Pa.Super. 457, 460, 506 A.2d 438, 440 (1986) (citing *Commonwealth ex rel. Williams v. Miller,* 254 Pa.Super. 227, 230, 385 A.2d 992, 994 (1978)).[5]

> The scope of review of an appellate court reviewing a custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*McMillen v. McMillen,* 529 Pa. 198, 202, 602 A.2d 845, 847 (1992). *See also Dorsey v. Freeman,* 438 Pa.Super. 236, 652 A.2d 352 (1994). The scope of review of a visitation order is the same as that for a custody order. *Bucci,* 351 Pa.Super. at 460–461, 506 A.2d at 440.

"Whether the matter concerns custody or visitation, our paramount concern is the best interest of the child." *Norris v. Tearney,* 422 Pa.Super. 246, 248–249, 619 A.2d 339, 340 (1993) (quoting *McMillen v. McMillen,* 529 Pa. 198, 602 A.2d

---

visit with the MacDonald family. So she's not adverse to the visitation." Notes of Testimony, 3/24/94, at 18.

5. In *In Interest of Tremayne Quame Idress R.,* 286 Pa.Super. 480, 429 A.2d 40 (1981), this Court addressed the issue of the allocation of the burden of proof in custody cases where the dispute arose between two third parties. The Court concluded that the burden of proof should be allocated equally. It must be noted that in cases where the dispute is between a parent and a non-parent, the evidentiary scales are "tipped hard" in favor of the parent. *Dorsey v. Freeman,* 438 Pa.Super. 236, 652 A.2d 352 (1994) (citing *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977)). Notably, where a party seek visitation, "[t]he burden is less than that in custody cases." *Bucci v. Bucci,* 351 Pa.Super. 457, 460, 506 A.2d 438, 440 (1986).

845 (1992)). The trial court determined that it was in Child's best interest to have contact with Cousin as the de facto aunt. Mother and Cousin grew up together. Cousin had spent more time with Mother than did Maternal Grandmother. As such, Cousin was the child's link to his mother and his heritage. "Except under unusual circumstances, no child should be cut off entirely from one side of its family." *Commonwealth ex rel. Williams v. Miller*, 254 Pa.Super. 227, 232–233, 385 A.2d 992, 995 (1978). *See also In Interest of Tremayne Quame Idress*, 286 Pa.Super. 480, 429 A.2d 40 (1981).

In view of the trial court's factual findings, we do not find the visitation order to be an abuse of discretion. *McMillen, supra.*

Order affirmed.

CAVANAUGH, J., concurs in the result.