721 A.2d 1067

**Susan KUROPATWA, Appellant,**

v.

**STATE FARM INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1997.

Decided Dec. 22, 1998.

Ross Begelman, Philadelphia, Omid Niknam, Bala Cynwyd, for Susan Kuropatwa.

Robert J. Foster, Amicus for Pa. Trial Lawyers.

Donald J. Brooks, Jr., Philadelphia, for State Farm Mutual Automobile Ins. Co.

Steven Williams, James T. Moughan, Philadelphia, Amicus for Pa. Defense Institute.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

Susan Kuropatwa appeals from the Superior Court's order affirming the order of the Bucks County Common Pleas Court, which sustained the preliminary objections of State Farm Mutual Automobile Insurance Company (Appellee) to Kuropatwa's second amended complaint. We granted allocatur limited to the issue of whether an insured has standing to file suit against his or her automobile insurance carrier to compel payment of medical bills when payment has been denied based upon a peer review report requested under 75 Pa.C.S. § 1797(b). For the following reasons, we hold that an insured does have standing to bring an action against the insurer under such circumstances.

Where there is a challenge to the sustaining of preliminary objections in the nature of a demurrer, all material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, are admitted as true for the purposes of appellate review. *Price v. Brown,* 545 Pa. 216, 680 A.2d 1149 (1996).

On April 6, 1991, Susan Kuropatwa was involved in an automobile accident in which she sustained physical injuries. At the time of the accident, Kuropatwa was an insured under an automobile insurance policy issued by State Farm to her husband, Anthony Kuropatwa. Kuropatwa received medical treatment, including physical therapy, for her injuries.[1] In

---

1. In paragraph 6 of her second amended complaint, Kuropatwa described the injuries as "blunt abdominal trauma, right hip contusion and echymords of right hip arca, bilateral knee contusions, contusion and sprains of shoulders, traumatic cervical sprain, traumatic lumbosa-

March of 1994, almost three years after the accident, Kuropatwa again sought medical treatment for pain that she claimed was related to the automobile accident. Medical services and treatment were provided to her by the Academy Imaging Center and DiRenzo Chiropractic Center during the period from March 16, 1994 to May 31, 1994.

The Academy Imaging Center and DiRenzo Chiropractic Center submitted bills for their services to State Farm for reimbursement. State Farm submitted the bills to Worldwide, a peer review organization (PRO), pursuant to the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1701 et seq. On August 18, 1994, State Farm forwarded to DiRenzo Chiropractic Center a copy of the peer review report and determination submitted by Worldwide after an initial review of the bill submitted by DiRenzo Chiropractic Center. Worldwide's report concluded that the medical treatment rendered by DiRenzo Chiropractic Center from March 16, 1994 to May 31, 1994 was "not supported by the documentation to be medically necessary for the treatment of injuries allegedly sustained in the motor vehicle accident which occurred approximately three years previously on 4/6/91." In an accompanying letter, State Farm advised DiRenzo Chiropractic Center that it would not be issuing any payment for services rendered to Kuropatwa on March 13, 1994 and ongoing based upon Worldwide's report.

By letter dated October 20, 1994, State Farm informed Academy Imaging Center that it would not be issuing payment for services rendered to Kuropatwa on March 25, 1994 based upon the PRO review conducted by Worldwide. The copy of Worldwide's report, which was forwarded to Academy Imaging Center, stated that "X-rays of the lumbosacral spine and bilateral hips performed 3/25/94 by Academy Imaging Center were not necessary or appropriate for the treatment of injuries sustained in the accident of 4/6/91." The report further stated that Dr. DiRenzo of the DiRenzo Chiropractic

cral sprain, possible Iliotibial Band Syndrome, and right meralgia parasthetic."

Center could have availed himself of diagnostic imaging that was previously performed in 1991 and 1992.

On September 6, 1994, Dr. DiRenzo requested reconsideration of Worldwide's initial PRO determination. By letter dated November 14, 1994, State Farm informed DiRenzo Chiropractic Center that it would not be issuing any payment for services rendered on all treatment provided to Kuropatwa based upon the report issued by Worldwide after its reconsideration of the claim on November 4, 1994. In the attached report, Worldwide's reviewer indicated that she agreed with the initial determination made by Worldwide. The report stated that "[b]ased solely on the lack of documentation, the treatment rendered . . . is unsupported by the documentation brought forth for review regarding medical necessity, appropriateness the [sic] motor vehicle accident dated 4/6/91 and the care being rendered three years post-trauma." The report further noted that no day-to-day progress notes existed to support the need for treatment after March 16, 1994, and that no direct correlation could be made between the medical treatment and the 1991 accident.[2]

On April 28, 1995, Kuropatwa filed a civil action against State Farm based upon its failure to pay the medical expenses incurred in 1994. The complaint asserted that State Farm had failed to comply with its obligations under the automobile insurance policy. In addition to the breach of contract claim, Kuropatwa asserted causes of action for fraud and bad faith based upon State Farm's refusal to pay her medical bills. Preliminary objections were filed by State Farm and Kuropatwa filed an amended complaint. After State Farm renewed its preliminary objections, Kuropatwa filed a second amended complaint.

State Farm again filed preliminary objections, asserting that Kuropatwa lacked standing to assert a cause of action based upon its refusal to pay the submitted medical bills. State Farm asserted that Kuropatwa did not have a substan-

2. The record does not show that reconsideration of the PRO determination was requested in connection with the services provided by Academy Imaging Center.

tial interest in the subject matter of the litigation because the MVFRL precludes a provider from collecting payment from an insured for medically unnecessary treatment or rehabilitative services or merchandise when such determination has been made by a PRO or a court.[3] The common pleas court sustained the preliminary objections and dismissed the second amended complaint, concluding that Kuropatwa lacked standing to bring the action against State Farm.

The common pleas court's order was affirmed by a split decision of a panel of the Superior Court in a memorandum opinion, which adopted the common pleas court's opinion. Judge Del Sole filed a dissenting opinion, concluding that Kuropatwa has standing to bring the action against State Farm because, as a party to the insurance contract, Kuropatwa has the right to sue to enforce the terms of the contract. We granted Kuropatwa's petition for allowance of appeal and now reverse the order of the Superior Court.

"A party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Nye v. Erie Insurance Exchange,* 504 Pa. 3, 5, 470 A.2d 98, 100 (1983), citing *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). "As a general matter, the core of the concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no right to obtain a judicial resolution of his challenge." *Pennsylvania Game Commission v. Department of Environmental Resources,* 521 Pa. 121, 127, 555 A.2d 812, 814 (1989).

In *William Penn Parking Garage,* we observed that what is necessary to render a person aggrieved is that the party has a substantial, direct and immediate interest in the claim sought to be litigated.

A 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens

---

3. State Farm also raised preliminary objections in the nature of a demurrer to the counts of the second amended complaint which asserted fraud and bad faith.

in procuring obedience to the law. A 'direct' interest requires a showing that the matter complained of caused harm to the party's interest. An 'immediate' interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it. . . .

*South Whitehall Township Police Service v. South Whitehall Township,* 521 Pa. 82, 86–87, 555 A.2d 793, 795 (1989) (citations omitted).

It is undisputed in this case that, as a general rule, a party to an insurance contract has standing to sue to enforce the terms of the insurance contract. State Farm asserts, however, that an insured under an automobile insurance policy lacks standing to enforce the terms of the policy when claims for treatment, health care services, or products are denied following a PRO determination in favor of the insurer under 75 Pa.C.S. § 1797(b). State Farm contends that the denial of an insured's claim for medical treatment or services after such determination deprives the insured of standing to enforce the terms of his or her automobile insurance policy because the insured will not be obligated to pay for the medical treatment or services. Kuropatwa argues that as an insured who has been denied coverage for medical bills incurred in an automobile accident, she has standing to challenge the insurer's failure to comply with the terms of the insurance policy issued to her. Kuropatwa contends that she has standing to enforce the terms of the insurance policy that obligate State Farm to pay for medical treatment and services that Kuropatwa requires as a result of the automobile accident in which she was injured.

We are unpersuaded by State Farm's argument that by virtue of the provisions of the MVFRL relating to the peer review process, an insured is deprived of standing to enforce his or her rights under an automobile insurance policy. We agree with Kuropatwa that she has standing to bring an action to enforce the terms of her insurance policy with State Farm based upon her claim that she was wrongfully denied coverage

for medical services and treatment.[4]

Under the MVFRL, a peer review organization may evaluate the medical treatment or services provided to an individual who has been injured in an automobile accident when the insurer challenges the reasonableness and necessity of the treatment of service. The peer review process for a challenge by the insurer is set forth in 75 Pa.C.S. §1797(b), which provides:

**(b) Peer review plan for challenges to reasonableness and necessity of treatment—**

(1) **Peer review plan.**—Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary. An insurer's challenge must be made to a PRO within 90 days of the insurer's receipt of the provider's bill for treatment or services or may be made at any time for continuing treatment of services.

(2) **PRO reconsideration**—An insurer, provider or insured may request a reconsideration by the PRO of the PRO's initial determination. Such a request for reconsideration must be made within 30 days of the PRO's initial determination. If reconsideration is requested for the services of a physician or other licensed health care professional, then the reviewing individual must be, or the reviewing panel must include, an individual in the same specialty as the individual subject to review.

(3) **Pending determinations by PRO**—If the insurer challenges within 30 days of receipt of a bill for medical

4. Kuropatwa also asserts that a peer review organization is not permitted under the MVFRL to determine the causation of the injuries of an insured. This issue has not been addressed by this Court, and will not be addressed in this appeal because of the limited grant of Kuropatwa's petition for allowance of appeal. See also, *Terminato v. Pennsylvania National Insurance Company*, 538 Pa. 60, 645 A.2d 1287, n. 1 (1994).

treatment or rehabilitative services, the insurer need not pay the provider subject to the challenge until a determination has been made by the PRO. The insured may not be billed for any treatment, accommodations, products or services during the peer review process.

(4) **Appeal to court**—A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

(5) **PRO determination in favor of provider or insured**—If a PRO determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12% per year on any amount withheld by the insurer pending PRO review.

(6) **Court determination in favor of provider or insured**—If, pursuant to paragraph (4), a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees.

(7) **Determination in favor of insurer**—If it is determined by a PRO or court that a provider has provided unnecessary medical treatment or rehabilitative services or merchandise or that future provision of such treatment, services or merchandise will be unnecessary, or both, the provider may not collect payment for the medically unnecessary treatment, services or merchandise. If the provider has collected such payment, it must return the amount paid plus interest at 12% per year within 30 days. In no case does the failure of the provider to return the payment, obligate the insured to assume re-

sponsibility for payment for the treatment, services or merchandise.

In *Terminato v. Pennsylvania National Insurance Company*, 538 Pa. 60, 645 A.2d 1287 (1994), we held that an insured is not required to seek reconsideration of an adverse peer review decision before initiating an action in common pleas court to recover medical benefits under an automobile insurance policy. We described the nature of the peer review process as

a mechanism through which an insurer may seek a professional assessment of the reasonableness and necessity of medical treatment in order to independently determine whether a claim should be paid or denied. It assists insurers in making an informed decision regarding a medical claim by mandating review by a medical professional when the claim is challenged by the insurer. Section 1797(b) is a cost containment provision, not an alternative dispute resolution procedure.

538 Pa. at 71, 645 A.2d at 1292.

"Unlike an administrative agency, a PRO simply lends its expertise to an insurer and has no statutory authority to resolve disputes [between an insured and insurer]." 538 Pa. at 68, 645 A.2d at 1291. The peer review process does not provide a forum for the resolution of disputes regarding coverage of medical bills under an automobile insurance policy; nor does § 1797(b) provide a remedy for the nonpayment of medical bills. As we observed in *Terminato*, only the insurer participates in the peer review process, and "[t]he detachment and neutrality required of a fact-finder is conspicuously absent in the contractual relationship between a PRO and an insurer." 538 Pa. at 68, 645 A.2d at 1291.

Despite the fact that a PRO has no authority to resolve disputes over coverage under an automobile insurance policy, State Farm argues that an insured lacks standing to challenge an insurer's denial of coverage in common pleas court following an adverse PRO determination because the insured would not be required to pay the medical bills. This argument entirely disregards the insured's interest in the underlying

contract of insurance which by its terms obligates the insurer to provide coverage for medical bills arising from the insured's involvement in an automobile accident in exchange for the payment of premiums. State Farm's position would effectively insulate from review a dispute between an insured and insurer as to whether the insurer is required to pay for medical services or treatment under the terms of the insurance policy. Where, as here, the insurer asserts that it has no obligation to pay medical bills submitted on behalf of an insured because the medical services or treatment were not causally related to the automobile accident, the insurer may raise its defense in the action brought before common pleas by the insured for the insurer's failure to comply with the terms of the automobile insurance policy.

Kuropatwa has standing to bring this action against State Farm to compel payment of medical bills that she asserts arose from her involvement in the 1991 automobile accident. As an insured under the insurance policy issued to her by State Farm, Kuropatwa has a direct, immediate and substantial interest in enforcing the terms of the policy and in judicial resolution of the dispute over coverage for her medical bills. Accordingly, the order of the Superior Court is reversed and the matter is remanded to the common pleas court.