Holly McNAMARA, Appellant,

v.

Kathleen M. THOMAS, Appellee.

Superior Court of Pennsylvania.

Submitted May 24, 1999.
Filed Nov. 17, 1999.

David W. Harris, III, Clarks Summit, for appellant.

Brian J. Cali, Dunmore, for appellee.

Before CAVANAUGH, ORIE MELVIN and BECK, JJ.

BECK, J.

¶1 This is an appeal from an order granting preliminary objections to a petition for visitation. The trial court determined that petitioner-appellant, Holly McNamara, failed to satisfy the standards for determining the standing of a third party to seek visitation/custody with a minor child established in *Kellogg v. Kellogg*, 435 Pa.Super. 581, 646 A.2d 1246 (1994). We affirm.

¶2 Appellant McNamara is the biological mother of an eleven year old daughter, S.P.T., born in 1988. She and the child's biological father never married. In 1989, the biological parents jointly agreed to transfer custody of the child to Andrew M. Thomas II, the child's paternal grandfather, but retained the right to visit her. McNamara exercised this right throughout the time the child was in her grandfather's custody. McNamara would visit with the child every week during the summer and approximately once a month during the school year. She would also call the child several times a week and visited her on holidays.

¶3 In 1993 McNamara and the biological father voluntarily terminated their parental rights and consented to the adoption of the child by the child's paternal grandfather. After the adoption, McNamara continued to visit with the child, with the permission of the adoptive parent, until mid–1996 when the adoptive parent died. He left a will appointing the child's paternal aunt, appellee Kathleen M. Thomas, as the child's guardian with legal and physical custody.[1] The aunt never petitioned to adopt the child.

¶4 After the death of the adoptive father, the child lived with her aunt. McNamara's visitation with the child immediately declined. She alleges that the aunt began to prevent her from visiting the child or contacting her by telephone. McNamara's last visit with the child was at

the end of March or early April 1997. It would appear that at that time McNamara had not seen the child since Christmas of 1996. McNamara concedes that she did "back off" in her attempts to have contact with the child immediately after the adoptive father's death and did not attempt to contact the child's financial trustee or anyone else to determine how the child was faring. Ultimately, on December 23, 1997, McNamara filed a petition for visitation with the child.

¶5 The appellee aunt filed preliminary objections challenging McNamara's standing to seek visitation on the ground that McNamara had relinquished all legal rights and responsibilities as to the child when McNamara agreed to the termination of her parental rights. After initially denying the preliminary objections the trial court granted reconsideration and scheduled a hearing and reargument. At the hearing, McNamara testified to the facts as set forth above. On September 30, 1998, the trial court sustained the preliminary objections. The court ruled that McNamara had not proven by clear and convincing evidence that she had shown a sincere, substantial and sustained interest in the welfare of the child. Therefore, the court ruled that McNamara had failed to demonstrate that she had standing to seek visitation with the child under the standards established by Pennsylvania law. *See Kellogg v. Kellogg, supra.*

¶6 We may reverse the trial court's grant of preliminary objections on grounds of lack of standing only for an abuse of discretion or error of law. *Id.* at 1250.

¶7 McNamara contends that the trial court abused its discretion by finding that she failed to demonstrate her sincere, substantial and sustained interest in the welfare of the child. Appellee counters that the trial court did not abuse its discretion

1. The record in this matter reflects that primary legal and physical custody was confirmed in appellee Thomas by a court order

approving a temporary stipulation in settlement of a petition for visitation filed by the child's maternal grandparents.

because McNamara's own testimony revealed that she had flagged in her efforts to maintain a relationship with the child after the death of the adoptive parent and had not sustained a sufficient interest in the child's welfare. Moreover, appellee argues that even if McNamara had shown a sufficient and sustained interest in the welfare of the child, she nevertheless lacks standing because she voluntarily relinquished all rights to the child years ago and should not be permitted to seek visitation with the child she allowed to be adopted.

¶ 8 We point out that the legal status of both appellee and appellant are as third parties with the appellee-aunt in the position of a third party with custody. The law of Pennsylvania governing the standing of third parties to obtain custody of or visitation with children who are in the custody of another third party has been settled. In *Kellogg v. Kellogg*, a panel of this court determined that anyone who is not the parent of a child (i.e., a third party) has standing to seek custody of the child as against another third party who has custody of the child only if the moving party produces clear and convincing evidence that he or she "has shown a sustained, substantial and sincere interest in the welfare of the child." *Id.* at 1249. Following *Kellogg*, another panel of this court applied the same standard to a case which, like the instant case, involved a petition for visitation by a third party against a custodial third party. *MacDonald v. Quaglia*, 442 Pa.Super. 149, 658 A.2d 1343 (1995).

¶ 9 Both *Kellogg* and *MacDonald* recognized that the law differentiates between an attempt by a third party to seek custody/visitation against a person who has the legal status of a parent and an attempt by a third party to seek such rights against another third party who merely has custody of the child. In the former situation, the law requires a greater showing by the moving party to establish his or her standing to pursue the matter. *See, e.g., Jack-*

*son v. Garland*, 424 Pa.Super. 378, 622 A.2d 969 (1993)(third party seeking custody of child presently in physical custody of another third party but still in legal custody of natural parent did not have standing); *Gradwell v. Strausser*, 416 Pa.Super. 118, 610 A.2d 999 (1992) (third parties lack standing to seek custody against natural parents unless third party demonstrates he has stood *in loco parentis* to child); *See also Bupp v. Bupp*, 718 A.2d 1278 (Pa.Super.1998).

¶ 10 The law makes this differentiation for good reason. As the *Jackson* Court explained, "[t]he law protects the natural parent's relationship with his or her child and will not interfere unnecessarily with that relationship.... Freedom of personal choice in matters of family life, and concomitant freedom from unwarranted governmental intrusions, is a fundamental liberty interest protected by the Fourteenth Amendment...." *Jackson*, 622 A.2d at 970–71. In contrast, cases that do not involve an attempted intrusion upon the rights of persons who have the legal standing of parents are governed by a different and less demanding standard. The *Kellogg* Court recognized this somewhat unusual aspect of the law of standing in custody/visitation cases when it stated:

In cases involving child custody the traditional principles of standing are modified. The standing analysis considers the relationship of the parties asserting standing. Thus, a third party may have standing vis-à-vis another third party but may not have standing vis-à-vis a natural parent.

*Kellogg*, 646 A.2d at 1248 n. 1.

¶ 11 In this case, appellee argues that we should not recognize appellant as a third party. Instead, appellee urges us to craft a new legal principal applicable only to natural parents whose parental rights have been terminated and whose children have been adopted. Appellee would have us hold that such a party does not, as a matter of law, have standing to seek visitation with his or her biological child, no

matter what the actual relationship between the former parent and the child has been and despite the fact that the child is not now in the custody of the adoptive parent. Support for this new principle is allegedly found in the comprehensiveness and finality of termination of parental rights and the policies undergirding Pennsylvania adoption law.

¶ 12 Clearly a parent whose rights are terminated no longer has the visitation rights *of a parent*. This does not mean, however, that there are not circumstances under which that person could seek visitation *as a third party*. Moreover, appellee's description of the effect of an adoption on the rights of the biological parent is not relevant in this case. The adoptive parent has died. We are not confronted with the task of balancing the rights and interests of appellant against those of the child's adoptive parent. The legal posture of this case is the appellant as a third party against another third party who has custody. Thus, there is no issue before us as to whether appellant's attempt to secure visitation rights is an unwarranted intrusion on the adoptive parent's rights. Since there is no adoptive parent in this case our decision does not implicate the policies of permanency and finality underlying Pennsylvania adoption law.

¶ 13 This case presents the easier question of the rights of one third party as against another who now has custody of the child. And for this question the law of Pennsylvania provides an entirely workable standard of decision, *i.e.*, has the petitioner demonstrated by clear and convincing evidence that he or she has shown a substantial, sustained and sincere interest in the welfare of the child? *Kellogg, supra.*

¶ 14 When appellant forfeited her rights as the child's natural parent, she did so completely and forever. However, she retained her rights as a third party and now stands in the same position as would any other third party who sought visitation rights as to this child. *Kellogg, supra.*

¶ 15 Having concluded that the *Kellogg* standard governs this case, we need only examine the record to determine whether it supports the trial court's decision that McNamara failed to show by clear and convincing evidence that she meets that standard. Although the record demonstrates that for many years McNamara exhibited a high level of interest in the welfare of this child, McNamara's own testimony indicates that she failed to maintain the same level of interest after the adoptive parent died. Thus, finding no abuse of discretion, we must affirm the trial court's decision that she lacks standing to pursue her visitation petition.

¶ 16 Order affirmed.

¶ 17 Judge ORIE MELVIN filed a Concurring & Dissenting Opinion.

ORIE MELVIN, J., concurring and dissenting:

¶ 1 I concur in the result but disagree with the dispositive reasoning of the Majority. The instant facts are unique from those presented in either *Kellogg*[2] or *MacDonald*[3] in that the party now seeking visitation has voluntarily relinquished her parental rights, which includes visitation. Therefore, I disagree with the Majority's bestowing of third party rights upon the instant Appellant. Moreover, on these facts I view the Appellee's status as consonant with that of an adoptive parent.

¶ 2 Of particular importance, *Kellogg* and *MacDonald* did not discuss what effect the fact that the party seeking custody/visitation has already relinquished their

---

2. In *Kellogg*, the first wife sought custody of her former husband's children from his second marriage following his murder at the hands of his second wife.

3. In *MacDonald*, a cousin sought visitation of a child in the custody of the maternal grandmother.

parental rights would have on the status to be accorded that person. The Majority finds that this fact is unimportant because the adoptive parent is dead and thus considers Appellant as any other third party in a custody dispute. The right to visit with her biological child is one of the group of rights that were voluntarily relinquished and extinguished by the adoption and are not revived by the adoptive parent's subsequent death. Thus, we should not ignore the extinguishment of her parental rights when examining her standing.

¶ 3 In general, the relevant focus in deciding the standing of a party is an analysis of that party's interest in the subject matter of the dispute, not a weighing of his or her interest compared with another party. *See generally Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975) (indicating standing focuses on nature of party's interest in connection with challenged action). "The law of standing provides that one cannot evoke the jurisdiction of the court to enforce private rights or to maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal right, title or interest in the subject matter or controversy." *Jackson v. Garland*, 424 Pa.Super. 378, 622 A.2d 969, 971 (1993). "[W]hat is necessary to render a person aggrieved is that the party has a substantial, direct and immediate interest in the claim sought to be litigated." *Kuropatwa v. State Farm Insurance Company*, 554 Pa. 456, 460, 721 A.2d 1067, 1069 (1998) (citing *William Penn Parking Garage, supra*).

¶ 4 Presently, when Appellant voluntarily relinquished her parental rights and consented to the paternal grandfather's subsequent adoption of the child, her parental rights were lost forever.[4] *See* 23

Pa.C.S.A. § 2502(a) (stating "the parent or parents of the child may petition the court for permission to relinquish forever all parental rights to their child."). Upon the death of the adoptive parent these rights do not revert to the biological parent. Such a result would run contrary to the effect given to adoptions. A necessary consequence of our adoption laws is to sever a child from its own family tree. As stated in *Harvey Adoption Case*, 375 Pa. 1, 3, 99 A.2d 276, 277 (1953), "a decree of adoption **terminates forever all relations between the child and its natural parents**, severs it entirely from its own family tree and engrafts it upon that of its new parentage: *Schwab Adoption Case*, 355 Pa. 534, 536, 50 A.2d 504, 505 (1947)." (Emphasis added). *Accord Chambers Appeal*, 452 Pa. 149, 154, 305 A.2d 360, 363 (1973).

> Moreover, this statutorily created and judicially decreed relationship between adoptive parents and the child must be given 'such finality as will abolish the fear that in the years ahead something will occur to extinguish the parent-child status and force [the adoptive parent] to relinquish the [child he has] adopted and upon whom [he has] lavished care and affection.'

*In Re Adoption of Christopher P.*, 480 Pa. 79, 86, 389 A.2d 94, 97–98 (1978) (quoting *List Adoption Case*, 418 Pa. 503, 517, 211 A.2d 870, 877 (1965)).

¶ 5 The rationale therefore was aptly described in *Faust v. Messinger*, 345 Pa.Super. 155, 497 A.2d 1351 (1985), *appeal dismissed*, 514 Pa. 286, 523 A.2d 741 (1987):

> The entire body of law pertaining to adoption harmonizes in order to place an adopted child in the shoes of a natural child in all legal respects, failing only to alter the biological makeup of the child. The intention and result of the law is to

---

4. In a 1982 amendment to the Adoption Act, the legislature clarified the contents of the written consent. Section 2711(d) of the Adoption Act provides that the consent in-

clude the language, "I understand that by signing this consent I indicate my intent to permanently give up all rights to this child."

enfold an adopted child in his new family so as to be indistinguishable from his new siblings in every possible respect. Rights of inheritance are changed; parental and filial rights and duties are altered; birth records are substituted; adoption records are impounded. In every possible respect, all family relationships are thus reestablished within the adopting family and all ties with the natural family are eradicated.

*Id.* 497 A.2d at 1353.

¶ 6 Accordingly, I would find Appellant has no interest whatsoever let alone a "substantial, direct and immediate interest in the claim sought to be litigated." *Kuropatwa*, 554 Pa. at 460, 721 A.2d at 1069. To accept, as the Majority does, that the Appellant has third party rights would circumvent the legal effect of adoption decrees by opening the door to the reassertion of rights long since forfeited. Moreover, to permit standing to Appellant would subvert the wishes of the adoptive parent who duly appointed Appellee as guardian of this child. I believe that the finality granted an adoptive parent by the adoption decree should be likewise extended to that adoptive parent's statutorily prescribed choice of guardian. Since Appellee is now charged with the personal care of this child she should be permitted to select, as would be the adoptive parent's right, the persons with whom the child will now associate in order to effectuate the child's best interests. Hence, although the trial court and the Majority inappropriately applied the *Kellogg* standard, they nevertheless properly determined Appellant lacked standing.[5] I, therefore, can only concur in the result.

---

[5] It is well settled that where the result is correct, an appellate court may affirm a trial court's decision on any ground. *Boyer v. Walker*, 714 A.2d 458, 463 n. 10 (Pa.Super.1998).