**West v. West**

428

C.P. of Berks County, No. 12-23598

Pro Se plaintiff.
*Gerald S. Robinson*, for defendants.

BUCCI, *J.*, November 27, 2013—Following a custody trial in the above-captioned matter and in consideration of the evidence presented and the record, we hereby enter the following:

FINDINGS OF FACT, CONCLUSIONS OF LAW, DISCUSSION AND FINAL CUSTODY ORDER

## FINDINGS OF FACT

1. Plaintiff, Deb S. West (hereinafter, "paternal grandmother"), currently resides at 309 North Walnut Street, Wernersville, Berks County, Pennsylvania.

2. Defendant, Garrett S. West (hereinafter, "father"), currently resides at 1003 Maplewood Avenue, Hopewell, Virginia with his paramour, Tiffany Kubina.

3. The whereabouts of Amber D. Stokley, (hereinafter, "mother) are presently unknown.

4. Mother did not participate in the custody trial.

5. The subject of the within custody matter is Nathan L. West, born April 8, 2005, who is the natural child of father and mother (hereinafter, "the child").

6. The child has been diagnosed with ADHD.

7. The court could discern the child's mental impairment during the in camera interview we conducted with the child.

8. The child had attended the Milton Hershey School, which is a residential school for children with special needs.

9. The child reported being abused by another student during his residency at the Milton Hershey School.

10. As a result of this, the child left the school.

11. There is a pending lawsuit against the Milton Hershey School over the purported abuse suffered by the child while a resident there.

12. Father and the child lived in paternal grandmother's two-story home in 2012/2013. Father and the child occupied the second story and paternal grandmother

occupied the first floor of the residence.

13. The parties' relationship deteriorated in 2013 and ultimately the parties filed protection from abuse ("PFA") petitions against each other before this court. We denied father's PFA petition and granted paternal grandmother's PFA petition, however we declined to evict father from paternal grandmother's home. Instead, the final PFA order only excluded father from the first floor of the residence.

14. Paternal grandmother called the police after the entry of the PFA order, and the police asked Father to leave the home entirely.

15. As a result of paternal grandmother's actions, which we find unreasonable under the circumstances, father and the child were rendered essentially homeless and were forced to reside in a motel room.

16. Thereafter, father and the child moved to Virginia to re-establish themselves, residing in Father's paramour's residence.

17. Although both father and paternal grandmother contend that they have been the child's primary caretaker in mother's absence, and while acknowledging that paternal grandmother has provided significant care, we find that father has been the child's primary caretaker for the majority of the child's life, excluding the time the child resided at the Milton Hershey School.

18. The child has resided with father excluding the time the child resided at the Milton Hershey School.

19. Father has secured employment and purchased a home in Hopewell, Virginia.

20. The child's life has not been very stable.

21. Father is partially disabled as a result of an injury

and he had been unemployed for an extended period of time.

22. Father apparently received a generous compensation as a result of a lawsuit against the party responsible for his injuries and impairment.

23. Father used the proceeds to purchase a nice, comfortable home in Hopewell, Virginia.

24. Father works out of his home, on the computer, for an internet-based company.

25. Father is in a positive relationship and his paramour appears to be a positive influence and helps to care for the child.

26. Father is more capable than paternal grandmother of providing a stable home environment and caring for the child's needs.

27. Paternal grandmother's conduct towards the child has been inappropriate during visits she had with the child after father relocated to Virginia.

28. Paternal grandmother's conduct towards Father in the presence of the child prior to father's relocation was inappropriate and alarming to the child.

29. Father provides the nurturing the child needs, which is supplemented by father's paramour who also resides with father and the child.

30. Father is involved with the child's school and other activities.

31. The child's special needs are being addressed by professionals and father is following the recommendations of the professionals.

32. Paternal grandmother's conduct during the period of

time the child resided with her and her continued conduct following father's relocation to Virginia has caused the child to be repulsed.

33. The child clearly expressed to this court that he does not wish to have contact with paternal grandmother.

34. Father has demonstrated the ability to maintain a loving, stable, consistent and nurturing relationship with the child and to address the child's special needs.

35. Paternal grandmother has not had any significant periods of physical custody of the child.

36. Father has attended to the daily physical, emotional, developmental, educational and special needs of the child.

37. Father's work schedule allows him to work from home when the child is not at school and father's paramour is also an appropriate child-care resource and is available and willing to assist father care for the child.

38. There is a history of acrimony between father and paternal grandmother that would make co-parenting impossible.

39. Paternal grandmother has undermined father's parenting efforts in the past.

40. Paternal grandmother's conduct in the presence of the child demonstrates a lack of judgment on her part.

## CONCLUSIONS OF LAW

1. Actions in child custody are decided under 23 Pennsylvania Child Custody Act, 23 Pa.C.S.A. §5321 *et. seq.* and the decisional law that flows therefrom.

2. The court has jurisdiction of the parties, the child, and the custody issues in this case. *See* 23 Pa.C.S.A. §5422

3. Paternal grandmother has standing to seek custody of the child. *See* 23 Pa. C.S.A §5324(2), (3).

4. "It is axiomatic that the paramount concern in any child custody proceeding is the best interests of the child." *Costello v. Costello*, 446 Pa. Super. 371, 375, 666 A.2d 1096, 1098 (1995). *Kirkendall v. Kirkendall*, 844 A.2d 1261, 2004 Pa. Super 55 (2004) ("The best interests of the child is our bedrock in this determination.").

5. "Such a determination, made on a case-by-case basis, must be premised upon consideration of all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Alfred v. Braxton*, 442 Pa.Super. 381, 385, 659 A.2d 1040, 1042 (1995)(internal quotations omitted); *Jackson v. Beck.* 858 A.2d 1250, 1252 (Pa. Super. 2004).

6. In making a custody determination between a parent and a grandparent, the court shall consider whether the award of custody to the grandparent interferes with any parent-child relationship. 23 Pa. C.S.A §5328(c).

7. Parents have a *"prima facie* right to custody", and in any contest between parents and third parties, the evidentiary scale is tipped in favor of the parents. *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980).

8. For purposes of a custody dispute, persons other than the natural parents are considered "third parties." *See Gradwell v. Strausser*, 416 Pa. Super. 118, 121-23, 610 A.2d 999, 1001 (1992).

9. Even though grandparents are given special treatment regarding standing to bring a custody matter, once the grandparent enters the court after clearing the standing hurdle, they are considered third parties. *Albright v. Commonwealth ex. Rel. Fetters*, 421 A.2d 157 (1980).

10. "A third party cannot place himself *in loco parentis* in defiance of the parents' wishes and the parent/child relationship." *B.A. and A.A. v. E.E.*, 559 Pa. 545, 550, 741 A.2d 1227, 1229 (2000).

11. When a grandparent brings a custody action against a parent, the court shall consider the factors enumerated under 23 Pa. C.S.A. §5328(a) and (c) in making a custody determination.

12. The principle of the parents having a *prima facie* right to custody is not dispositive of the ultimate custody determination, rather it merely instructs the trial judge that the nonparent bears the burden of production and persuasion and that the nonparent's burden is heavy. *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980).

13. Awards of custody to third parties (including grandparents) are most frequently made when the child has been in the custody of a third party for a lengthy period of time and the parent is not in a position to provide proper care for the child. *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980).

14. The presumption in favor of parents over third parties is now codified in Pennsylvania's Child Custody Law. *See* 23 Pa. C.S.A. §5327(b).

15. A parent's ability to care for a child must be determined as of the time of the trial, and not based on past behavior at an earlier point in time. *Hall v. Mason*, 462 A2d 843 (Pa. Super. 1983); *Bresnock v. Bresnock*, 500 A.2d 91 (Pa. Super. 1985).

16. "Except under exceptional circumstances, no child should be cut off entirely from one side of its family." *McDonald v. Quaglia*, 442 Pa.Super. 149, 155, 658 A.2d 1343, 1346 (1995) quoting *Norris v. Tearney*, 442

Pa.Super. 256, 248-49, 619 A.2d 339 (1993).

17. The weight given a child's preference is based upon maturity and the ability to form a well-reasoned opinion. *Bovard v. Baker*, 775 A.2d 835 (Pa. Super.2001).

18. The child's preference is not controlling. *McMillan v. McMillan*, 602 A.2d 845 (Pa. 1992).

19. The Child Custody Act enumerates sixteen (16) factors that this court must consider in determining whether to grant or deny any form of custody. *See* 23 Pa. C.S.A. §5328, discussed more fully below.

20. The court is required to consider all the factors set forth in 23 Pa. C.S.A. §5328. *See* 23 Pa. C.S.A. §5328(a); *JRM v. JEA*, 33 A.3d 647, 652 (Pa. Super. 2011) ("All of the factors listed in §5328 are required to be considered").

## DISCUSSION

In consideration of the above and in accordance with the requirements of the Child Custody Act, we consider the following factors in determining the best interests of The child. We consider these factors as they relate only to father and paternal grandmother, as mother is not presently participating in the within custody litigation.

1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party. *See* 23 Pa.C.S.A. §5328(h)(1). Father and paternal grandmother have a highly contentious relationship.

2. The present and past abuse committed by a party or member of the party's household, whether there is continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child. *See* 23

Pa.C.S.A. §5328(h)(2). Both parties filed PFA petitions against the other. We dismissed father's petition and granted paternal grandmother's petition, but we did not find paternal grandmother's allegations of abuse serious enough to warrant excluding or evicting father from paternal grandmother's residence. We do not find any continued risk of harm to the child in father's household.

3. The parental duties performed by each party on behalf of the child. *See* 23 Pa.C.S.A. §5328(h)(3). Father has demonstrated that he is willing and capable of performing parental duties on behalf of the child, whereas paternal grandmother has very little experience in caring for the child. This is especially important in this case, where the child has particular special needs. Father's work schedule allows him to be present for the child.

4. The need for stability and continuity in the child's education, family life and community life. *See* 23 Pa.C.S.A. §5328(h)(4). The child's life has been tumultuous thus far, and the child has lived in a residential school as well as at various locations with father. Mother is absent from the child's life. There has been little stability, although the child is now established in Virginia with father.

5. The availability of extended family. *See* 23 Pa.C.S.A. §5328(h)(5). This is not a factor that favors either party over the other under the circumstances of the case.

6. The child's sibling relationships. *See* 23 Pa.C.S.A. §5328(h)(6). This is not a factor that favors either party over the other under the circumstances of the case.

7. The well-reasoned preference of the child, based on

the child's maturity and judgment. *See* 23 Pa.C.S.A. §5328(h)(7). The child has indicated his strong and unequivocal preference to reside with father. Although the child is relatively young, his reasons were sound and compelling. The child's wishes are not dispositive of the ultimate issue of primary custody, but are being taken into consideration by the court.

8. The attempt of a parent to turn the child against the other parent (or party in this case), except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm. *See* 23 Pa.C.S.A. §5328(h)(8). There was credible evidence that paternal grandmother has attempted to alienate the child from father.

9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. *See* 23 Pa.C.S.A. §5328(h)(9). This factor favors father, who has demonstrated that he is capable and willing to care for the child and tend to the child's needs, including his emotional needs.

10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. *See* 23 Pa.C.S.A. §5328(h) (10). Again, father has demonstrated to The court that he is willing and capable of attending to the child's specific needs, which include his educational and special needs in particular.

11. The proximity of the residences. *See* 23 Pa.C.S.A. §5328(h)(11). The distance between the residences is considerable, because father has moved once again to Virginia. This factor does not favor one party over the other, but does impact the feasibility of any shared

custody arrangements.

12. Each party's availability to care for the child or ability to make appropriate child care arrangements. *See* 23 Pa.C.S.A. §5328(h)(12). Father's work schedule is flexible, which enhances father's availability to care for the child, and father's paramour is available to supplement father's care in the event that father is not available. Paternal grandmother is retired, and is therefore also available to care for the child. This factor does not favor either party over the other under the particular facts and circumstances in this case.

13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. *See* 23 Pa.C.S.A. §5328(h)(13). There is a high degree of acrimony and tension between the parties, which would make any type of shared custody difficult or impossible. Since there is also considerable geographic distance between them, shared custody would not be possible even if the parties resolved their differences.

14. The history of drug or alcohol abuse of a party or member of a party's household. *See* 23 Pa.C.S.A. §5328(h)(14). There was evidence that father had marijuana in his possession at some point and that paternal grandmother has a history of abusing prescription medication.

15. The mental or physical condition of a party or member of a party's household. *See* 23 Pa.C.S.A. §5328(h) (15). This is a major consideration in this case and it strongly favors father. Father contends that paternal grandmother has a long history of mental/emotional problems including depression and chronic fatigue syndrome which may evidence a bi-polar disorder.

Father also indicates that paternal grandmother has a history of abuse of prescription medication. We find it noteworthy that father's father was granted primary custody of father when the paternal grandparents separated. Father claims that paternal grandmother has a history of confrontational behavior with co-workers, which occurred during her employment with Verizon, and we find father's contentions to be credible. We are convinced that paternal grandmother's long-standing emotional problems are a significant impairment to her ability to have a normal, healthy relationship with the child.

16. Any other relevant factor. *See* 23 Pa.C.S.A. §5328(h)(16).

We have considered the above-listed factors and, moreover, we have evaluated whether paternal grandmother has overcome the statutory presumption that exists in the law in favor of parents (here father). The presumption in favor of parents over any third parties, including biological grandparents, is well-entrenched in the common law preceding the Child Custody Act. *See V.B. and C.B v J.E.B. and C.C.*, 55 A.3d 1193 (Pa. Super. 2012) (noting the "well established legal principle that there exists a rebuttable presumption in favor of birth parents over third parties in custody disputes").

Where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. In such instances, the parents have a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interests will be served by an award to the third party.

*Id.* at 1199 (Pa. Super. 2012) quoting *Charles v. Stehlik*, 744 A.2d 1255, 1258 (Pa. 2000). Paternal grandmother

has not demonstrated, by clear and convincing evidence, that the child should not be with Father and instead should be with her.

> Essentially, the Supreme Court determined, where circumstances do not clearly indicate the appropriateness of awarding custody to a non-parent, we believe the less intrusive and hence proper course is to award custody to the parents or parents.

*V.B. and C.B v. J.E.B. and C.C* at 1199 citing *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512 (1980). Because she has failed to overcome the rebuttable presumption in favor of awarding custody to father, we conclude that the only appropriate course of action is to allow the child to remain with father.

## CONCLUSION

For all the forgoing reasons, we hereby enter the following final custody order:

## FINAL CUSTODY ORDER

And now, this 27th day of November, 2013, the court hereby enters the following order:

1. Legal Custody. Garrett S. West ("father") have sole legal custody of Nathan L. West, born April 8, 2005 (hereinafter, "the child").

2. Physical Custody. Father shall have primary physical custody of the child. Deb S. West (hereinafter, "paternal grandmother") shall have partial physical custody of the child one Sunday per calendar month, for any four hour period between 9 a.m. and 4 p.m. that best accommodates the child's schedule and needs.

3. Relocation. If you are planning to relocate with the

child and your relocation will significantly impair any other party's exercise of his or her custodial rights, you are obligated to provide a detailed notice and counter-affidavit by certified mail, return receipt requested to all individuals who have custody rights to the child at least 60 days in advance of the proposed relocation in compliance with 23 Pa. C.S.A. Section 5337. Appendix B is attached hereto and incorporated by reference.