# Olsofsky v. Progressive Insurance Co.

C.P. of Lackawanna County, no. 01-CV-666.

*Christopher J. Osborne,* for plaintiff.
*Glenn A. Ricketti,* for defendant.

NEALON, *J.,* August 23, 2001—Defendant, Progressive Insurance Company, has filed preliminary objections seeking to dismiss those claims which have been filed by plaintiff, Michael Olsofsky, charging Progressive with bad faith liability pursuant to 42 Pa.C.S. §8371 and wanton misconduct under 75 Pa.C.S. §1797. Progressive contends that it cannot be held liable for punitive damages under 42 Pa.C.S. §8731 or treble damages under 75 Pa.C.S. §1797 since it denied first-party benefits to

Olsofsky based upon a "medical record review" rather than a "peer review." Progressive also argues that the remedies available under section 8371 are irreconcilably inconsistent with and pre-empted by sections 1716 and 1797 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.

For the reasons set forth below, we hold that a fatal conflict does not exist between section 8371 and sections 1716, 1798(b) of the MVFRL as those statutes regulate distinct forms of insurer conduct and prescribe compatible remedies as sanctions. Furthermore, since a "peer review" under section 1797(b) is based upon a paper review of medical records and bills, see 31 Pa. Code §69.52(c), (k), Progressive's contention that a medical record review is distinguishable from a peer review is devoid of arguable merit. We further find that a peer review organization exceeds its statutory and regulatory authority under section 1797(b)(1) of the MVFRL and 31 Pa. Code §69.51 if it concludes that medical treatment is not causally related to an accident since "causation" issues are addressed in sections 1712 and 1796(a) of the MVFRL rather than section 1797(b). Therefore, if an insurer rejects a medical expense benefits claim in reliance upon a "causation" finding by a PRO, it may be subject to bad faith liability and section 8371 and section 1797(b) are reconcilable in that event. However, inasmuch as the treble damages provisions of section 1797(b)(4) are applicable only if the insurer acts wantonly in refusing to honor a medical expense benefits claim *without* first securing a peer review, Olsofsky is not entitled to recover treble damages in this case as we deem Progressive's "medical record review" to be the same as a "peer review." Thus, Progressive's prelimi-

nary objections will be granted as to Olsofsky's claim for treble damages, but denied in all other respects.

## I. FACTUAL BACKGROUND

The well-pleaded allegations of the complaint reflect that Olsofsky was seriously injured in an automobile accident on July 24, 1998, while he was insured by Progressive under an automobile insurance policy which afforded first-party benefits coverage in accordance with the MVFRL, 75 Pa.C.S. §1701 et seq. (See plaintiff's complaint, ¶¶3-5.) Although the terms of the policy obligated Progressive to pay for the cost of all "necessary medical treatment and rehabilitative services" received by Olsofsky as a result of the accident, Progressive forwarded correspondence to Olsofsky's treating physician and legal counsel on February 15, 1999, advising them that it would no longer pay for Olsofsky's medical treatment. Specifically, Progressive represented that "a medical records review has been performed regarding treatment rendered to [Olsofsky]" which "reveal[ed] that there is no causal connection between the injuries sustained and a motor vehicle accident." (Id., ¶¶6-10, exhibit A.) Progressive further advised Olsofsky's treating physician and counsel that it would no longer "provide coverage for injuries as noted above." (Id.)

On February 7, 2001, Olsofsky filed a three-count complaint against Progressive asserting: (1) a cause of action for breach of contract based upon the terms of the insurance policy and the provisions of sections 1712(1) and 1716 of the MVFRL; (2) claims for punitive damages, counsel fees and statutory interest (3 percent above the prime rate) pursuant to 42 Pa.C.S. §8371; and (3) a demand for treble damages and counsel fees under 75 Pa.C.S. §§1797(b)(4) and 1798(b), as a result of

Progressive's "wanton conduct." (*Id.,* ¶¶12-23.) On March 1, 2001, Progressive presented preliminary objections, alleging a "lack of jurisdiction over a non-legal entity" and maintaining that Olsofsky has erroneously sued "Progressive Insurance Company" rather than "Progressive Northern Insurance Company." (See defendant's preliminary objections, ¶¶1-10.) Progressive also avers that Olsofsky's bad faith claims premised upon 42 Pa.C.S. §8371 should be dismissed since that statute "does not apply to an action seeking recovery of first-party benefits under the Pennsylvania MVFRL." (*Id.,* ¶17.) Last, Progressive posits that Olsofsky's request for treble damages under section 1797(b)(4) of the MVFRL must be stricken as 75 Pa.C.S. §1797 "only applies when an insurance carrier challenges the reasonableness or necessity of a medical bill and could [have] made that challenge by way of a peer review and opted not to do so." (*Id.,* ¶22.) According to Progressive, its denial of benefits to Olsofsky was predicated upon "a 'medical record review' which determined that [Olsofsky's] treatment with [his treating physician] was not causally related to the motor vehicle accident of July 24, 1998," rather than a "peer review" under section 1797. (*Id.,* ¶¶28-29, 35.)

Relying upon *Williams v. State Farm Mut. Auto. Ins. Co.,* 763 F. Supp. 121 (E.D. Pa. 1991), and *Baren v. Nationwide Ins. Co.,* 24 Phila. 42 (1991), Progressive submits that the statutory interest and counsel fee provisions of section 1716 of the MVFRL are in conflict with the language of 42 Pa.C.S. §8371 which provides for the recovery of interest, attorney's fees and punitive damages. Progressive reasons that "[i]n light of the time and effort the legislature developed [sic] to codifying the scheme for payment of first-party benefits, the clear leg-

islative intent is that the Financial Responsibility Law will apply to claims for first-party benefits and that section 8371 will apply to other actions." (See defendant's memorandum of law, p. 7.) In addition, citing *Barnum v. State Farm Mut. Auto. Ins. Co.,* 430 Pa. Super. 488, 635 A.2d 155 (1993), *rev'd and remanded,* 539 Pa. 673, 652 A.2d 1319 (1994) and *Gemini Physical Therapy & Rehabilitation Inc. v. State Farm Mut. Auto. Ins. Co.,* 40 F.3d 63 (3d Cir. 1994), Progressive argues that section 8371 is irreconcilably inconsistent with the peer review procedures contained in 75 Pa.C.S. §1797(b) such that Olsofsky's bad faith claims must be dismissed. (*Id.,* at pp. 10-11.)

In response, Olsofsky notes that the Lackawanna County courts have concluded post-*Barnum* that an insurer may be liable for bad faith under 42 Pa.C.S. §8371 if it misuses the PRO process by making a "causation" denial rather than attempting to determine whether the treatment and services "conform to the professional standards of performance and are medically necessary" under 75 Pa.C.S. §1797(b)(1). Olsofsky asserts that a "medical record review" is the equivalent of a "peer review" which cannot be employed by Progressive to make "causation" determinations. The parties have filed their respective memoranda of law, and following the completion of oral argument on August 1, 2001, this matter was submitted for a decision.

## II. DISCUSSION

### (A) *Standard of Review*

A preliminary objection in the nature of a demurrer tests the legal sufficiency of the complaint. *Constantino*

*v. University of Pittsburgh,* 766 A.2d 1265, 1268 (Pa. Super. 2001); *Nazar v. Clark Distribution Systems Inc.,* 46 D.&C.4th 28, 31 (Lacka. Cty. 2000). The question presented by a demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. *Viglione v. Pennsylvania Dept. of Corrs.,* 781 A.2d 248, 250 n.3 (Pa. Commw. 2001). When considering preliminary objections, all material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, are accepted as true, *Tyler v. Motorists Mut. Ins. Co.,* 779 A.2d 528, 530 (Pa. Super. 2001), while conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion need not be regarded as such. *Wagner v. Waitlevertch,* 774 A.2d 1247, 1250 (Pa. Super. 2001).

Preliminary objections may only be granted in cases where it is clear and free from doubt that the facts alleged are legally insufficient to establish a right to relief. *Stair v. Turtzo, Spry, Sbrocchi, Faul & LaBarre,* 564 Pa. 305, 309, 768 A.2d 299, 301 (2001). For that reason, a demurrer should not be sustained simply because of the novelty of a claim. *Denton v. Silver Stream Nursing and Rehab. Center,* 739 A.2d 571, 575 (Pa. Super. 1999); *Oven v. Pascucci,* 46 D.&C.4th 506, 511-12 (Lacka. Cty. 2000). Furthermore, if there is any doubt as to whether a demurrer should be granted, it should be resolved in favor of overruling the preliminary objections. *Lennon v. Wyeth-Ayerst Laboratories Inc.,* 2001 WL 755944, *1 (Pa. Super. June 14, 2001).

(B) *History of 75 Pa.C.S. §§1716, 1797 and 42 Pa.C.S. §8371*

In 1984, the Pennsylvania Legislature repealed the former No-fault Motor Vehicle Insurance Act, 40 P.S.

§1009.101 et seq. (repealed), and replaced it with the MVFRL. See Ronca, J.R. et al., *Pennsylvania Motor Vehicle Insurance: An Analysis of the Financial Responsibility Law*, §1.1 (2d ed. 2000). The repealed No-fault Act and the MVFRL both contain provisions governing the assessment of interest on overdue medical expense benefits and the recovery of counsel fees against non-compliant insurers. Whereas the No-fault Act provided for the assessment of interest on overdue benefits at the rate of 18 percent per annum, see 40 P.S. §1009.106(a) (repealed), section 1716 of the MVFRL reduces the statutory interest rate to 12 percent. See 75 Pa.C.S. §1716. Moreover, while the old No-fault Act authorized an award of counsel fees if the insurer denied a first-party benefits claim "without reasonable foundation," see 40 P.S. §1009.107(3) (repealed), the MVFRL entitles a claimant to recoup counsel fees "[i]n the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due." 75 Pa.C.S. §1716. See also, *McNally v. Maryland Casualty Co.,* 89 Lacka. Jur. 33, 38-39 (1987); *Arenberg v. State Farm Mut. Auto. Ins. Co.,* 88 Lacka. Jur. 1, 8-9 (1986). Section 1798(b) of the MVFRL also provides for the recovery of interest and "a reasonable attorney fee based upon actual time expended" if the insurer "acted with no reasonable foundation in refusing to pay the [first-party] benefits." 75 Pa.C.S. §1798(b).

In 1990, the MVFRL was amended by the Act of February 7, 1990, P.L. no. 6 (Act 6), which, inter alia, created a peer review system to regulate health care providers' charges for services rendered and to enable insurers to retain qualified peer review organizations to review an insured's medical records in an effort to deter-

mine whether the treatment provided was medically necessary. See *Pennsylvania Motor Vehicle Insurance, supra* at section 1.1(c). Specifically, the Act 6 amendments established a peer review mechanism "for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." 75 Pa.C.S. §1797(b)(1). In the event that an insurer has not challenged the reasonableness or necessity of certain treatment or services before a PRO, section 1797(b)(4) entitles an insured or provider to challenge the insurer's refusal to pay before a court of competent jurisdiction. To that end, "[c]onduct considered to be wanton shall be subject to a payment of treble damages to the injured party." 75 Pa.C.S. §1797(b)(4). Additionally, regardless of whether the insurer's conduct was wanton, it must pay 12 percent interest on the outstanding bills and reimburse the insured or provider for their counsel fees if the court determines that the treatment or services "were medically necessary." 75 Pa.C.S. §1797(b)(6).

Prior to the passage of Act 6, Pennsylvania recognized a cause of action for third-party bad faith, see *Cowden v. Aetna Casualty and Surety Co.,* 389 Pa. 459, 134 A.2d 223 (1957), but declined to acknowledge a claim for first-party bad faith beyond the administrative remedies set forth in the Unfair Insurance Practices Act, 40 P.S. §§1171.1-1171.4. See *D'Ambrosio v. Pennsylvania National Mutual Casualty Ins. Co.,* 494 Pa. 501, 508, 431 A.2d 966, 970 (1981) ("[s]urely it is for the legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers [and] it is equally for the legislature to determine whether sanctions beyond those created under the [UIPA] are re-

quired to deter conduct which is less than scrupulous."). However, in the same amendatory legislation which promulgated the peer review provisions in 75 Pa.C.S. §1797, the General Assembly enacted 42 Pa.C.S. §8371,which established a private cause of action against an insurer that has acted in bad faith towards its insured. Section 8371 was adopted in response to the *D'Ambrosio* court's refusal to create a common-law action for first-party bad faith, see *O'Donnell ex rel. Mitro v. Allstate Ins. Co.,* 734 A.2d 901, 905 (Pa. Super. 1999), and states:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess courts costs and attorney's fees against the insurer." 42 Pa.C.S. §8371.

The placement of section 8371 in title 42 of the Judicial Code indicates "that the legislature did not intend to limit the statute's application to motor vehicle insurance policies." *Boring v. Erie Ins. Group,* 434 Pa. Super. 40, 46, 641 A.2d 1189, 1192 (1994). By its plain language, the bad faith statute applies broadly to any actions "arising under an insurance policy" and has been found to govern insurer-insured disputes regarding various types of insurance coverage. See *e.g., Terletsky v. Prudential Property and Casualty Ins. Co.,* 437 Pa. Super. 108, 649 A.2d 680 (1994), *app. denied,* 540 Pa. 641, 659 A.2d 560 (1995) (auto insurance); *Birth Center v. St. Paul*

*Companies Inc.,* 727 A.2d 1144 (Pa. Super. 1999), *app. granted in part,* 560 Pa. 633, 747 A.2d 858 (2000) (malpractice insurance); *O'Donnell, supra* (homeowner's insurance). Compare *Winterberg v. Transportation Ins. Co.,* 72 F.3d 318, 324-25 (1995) (workers' compensation insurer cannot be held liable for bad faith under section 8371 since a workers' compensation claim is predicated upon a contract of hire between the employer and employee, not an insurance policy, and the more specific provisions of the Workers' Compensation Act take precedence over the general provisions of 42 Pa.C.S. §8371). Because of the bad faith statute's use of such comprehensive terminology, several commentators have concluded that it should be applied to first-party benefits claims inasmuch as "[a] suit for first-party medical benefits is an action arising under an insurance policy." See *e.g., Pennsylvania Motor Vehicle Insurance, supra* at section 4.4(e).

The remedial sanctions prescribed in sections 1716 and 1798(b) of the MVFRL are addressed to insurer conduct which is different from that type of activity which is regulated by 42 Pa.C.S. §8371. Section 1716 provides for the assessment of 12 percent interest on overdue benefits regardless of whether the insurer denied the claim without a reasonable basis. Sections 1716 and 1798(b) entitle a successful insured to recover counsel fees if the insurer has denied a claim "in an unreasonable manner" or without a "reasonable foundation." In contrast, section 8371 prescribes statutory interest at a rate different from that set forth in section 1716 and enables an insured to recover interest, attorney's fees or punitive damages only "if the court finds that the insurer has acted in bad faith toward the insured." For an insurer to be found

chargeable with bad faith, the insured must not only establish by "clear and convincing evidence" that the insurer did not have a reasonable foundation for denying benefits, but must further prove that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. See *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233-34 (3d Cir. 1997); *Terletsky, supra* at 125, 649 A.2d at 688. Thus, the burden of proof for a bad faith claim under section 8371 is more demanding than that governing interest and fees under sections 1716 and 1798(b). As such, sections 1716, 1798(b) of the MVFRL and 42 Pa.C.S. §8371 regulate distinct conduct by insurers and provide diverse forms of redress.

The 1990 amendments to section 1797(b) of the MVFRL authorize an automatic award of statutory interest (12 percent) "and all attorney's fees" if the court determines that health care treatment was "medically necessary" and the insurer has refused to pay for the medical care without first challenging the reasonableness or necessity of such treatment before a PRO. See 75 Pa.C.S. §§1797(b)(4), (6). As indicated above, section 8371 likewise provides for the recovery of interest and counsel fees, but only if the insurer has acted in bad faith. Moreover, although section 1797(b)(4) exposes an insurer to treble damages if it engages in "wanton" conduct while refusing to pay medical expense benefits without first seeking a peer review, section 8371 permits an award of punitive damages for "bad faith," which amount may be more or less than treble damages. Compare *Mid-West Paper Products Co. v. Continental Group Inc.,* 596 F.2d 573, 582-83 (3d Cir. 1979) (treble damages are three times the actual damages), with *Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 103-104, 555 A.2d 800, 803

(1989) (punitive damages do not have to bear a reasonable relationship to compensatory damages awarded in a case); *Paves v. Corson,* 765 A.2d 1128, 1137 (Pa. Super. 2000) (same); *Sprague v. Walter,* 441 Pa. Super. 1, 72, 656 A.2d 890, 925 (1995), *app. denied,* 543 Pa. 695, 670 A.2d 142 (1996) ("[o]ur Supreme Court has ruled that a mathematical proportionality requirement between punitive and compensatory damages would actually defeat the purpose of punitive damages, which is to punish tort-feasors for outrageous conduct and deter them and others from similar conduct."). Therefore, while both section 1797 and section 8371 allow for the recovery of interest and counsel fees, they do so based upon different forms of conduct. Conversely, although section 1797(b)(4) and section 8371 are designed to curtail comparable conduct (*i.e.,* wanton versus bad faith), they authorize diverse damages (*i.e.,* treble versus punitive) to sanction such activity.

The coexistence of sections 1716 and 1797 and 1798 of the MVFRL and 42 Pa.C.S. §8371 is dependent upon well-settled rules of statutory interpretation, including section 1933 of the Statutory Construction Act which states:

"Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." 1 Pa.C.S. §1933. See generally, *Hazleton Area*

*School District v. Zoning Hearing Board of Hazle Township,* 778 A.2d 1205, 1214 (Pa. 2001).

In that regard, it is important to note that section 8371 was adopted six years after the enactment of sections 1716 and 1798 of the MVFRL and that section 31 of Act 6 which promulgated the bad faith statute distinctly states that it "repealed all other acts and parts of acts insofar as they are inconsistent with this Act."

Additionally, section 1935 of the Statutory Construction Act governing "[i]rreconcilable statutes passed by the same General Assembly" states that whenever the provisions of two statutes enacted during the same General Assembly are irreconcilable, the statute with the later date of final enactment shall control, unless the statutes were passed on the same date, in which event the statute bearing the highest number shall prevail from the time it becomes effective. See 1 Pa.C.S. §1935. The bad faith statute and the peer review provisions of the MVFRL were adopted in 1990 by the same General Assembly. As to their effective dates, section 8371 was contained in section 3 of Act 6 and became effective July 1, 1990, whereas section 1797(b) was set forth in section 18 of Act 6 but became effective on April 15, 1990.

## (C) *Interplay Between MVFRL and 42 Pa.C.S. §8371*

With the advent of the bad faith statute, insureds who commenced litigation based upon a denial of first-party benefits invariably included claims for statutory interest, counsel fees and extra contractual damages under sections 1716 and 1797(b) of the MVFRL and 42 Pa.C.S. §8371. In response, insurers asserted that a fatal conflict existed between the broad remedies in section 8371 and

the more particularized first-party benefits procedures in sections 1716 and 1797. Insurance carriers further argued that under 1 Pa.C.S. §1933, the more specific provisions of the MVFRL should prevail in a first-party benefits context.

The judicial responses to these statutory construction disputes were less than uniform. Some courts concluded that the relief provided by section 8371 was irreconcilably inconsistent with the remedies afforded by sections 1716 and 1797 and that the bad faith statute did not apply to first-party benefits claims since the more specific provisions of the MVFRL were controlling. See *Riddell v. State Farm Mut. Auto. Ins. Co.,* 1992 WL 209971, *3 (M.D. Pa. 1992); *Williams v. State Farm Mut. Auto. Ins. Co.,* 763 F. Supp. 121, 126-27 (E.D. Pa. 1991). Others reasoned that no such conflict was present and that sections 1716 and 1797(b) of the MVFRL were reconcilable with 42 Pa.C.S. §8371 if the insurer abused the peer review process in denying benefits. See *Advanced Chiropractic Inc. v. Pennsylvania Nat'l Ins. Co.* 112 Dauph. Co. Rep. 405, 409 (1993); *Milton S. Hershey Medical Center v. State Farm Ins. Co.,* 21 D.&C.4th 62, 69-72 (Franklin Cty. 1992); *Mitrick v. State Farm Mutual Automobile Ins. Co.,* 13 D.&C.4th 540, 543 (York Cty. 1991). Another line of cases found that an irreconcilable inconsistency existed between section 8371 and section 1797(b), but that the putative conflict between section 8371 and section 1716 could be reconciled. See *e.g., Seeger v. Allstate Ins. Co.,* 776 F. Supp. 986, 990-91 (M.D. Pa. 1991).

Other jurists adopted a more fact specific approach in determining whether the statutes were discordant. For example, in *Grove v. Aetna Cas. & Surety Co.,* 855 F.

Supp. 113, 115 (W.D. Pa. 1993), the district court concluded that the peer review provisions of section 1797(b) generally pre-empt section 8371 in first-party benefits cases, except in those instances in which an insurer has denied benefits based upon a "causation" determination by a PRO since section 1797(b) clearly restricts the PRO's authority to "confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." Similarly, Judge R. Stanton Wettick fashioned an even more particularized analysis and held that: (1) an insured could simultaneously seek interest and counsel fees under sections 1716 and 1797 of the MVFRL and punitive damages under section 8371 "for claims involving medical bills denied on the ground that the treatment was not for injuries sustained in the automobile accident;" (2) if an insurer denies a claim without first submitting it to a PRO, "the insured is entitled to recover either punitive damages under section 8371 or triple damages under section 1797 upon establishing that the insurance company acted wantonly and in bad faith;" (3) an insured cannot seek punitive damages under section 8371 if the insurer submits the bills to a PRO which determines "that the treatment was not medically necessary or that it failed to conform to accepted professional standards;" and (4) punitive damages can be recovered by an insured under section 8371 if the insurer refuses to pay for treatment based upon a "causation" determination by a PRO. *Knox v. Worldwide Ins. Group,* 140 P.L.J. 185, 187-89 (1992).

The Pennsylvania Superior Court first addressed the application of section 8371 to first-party benefits claims in *Okkerse v. Prudential Property and Casualty Ins. Co.,* 425 Pa. Super. 396, 625 A.2d 663 (1993). In that case,

the insured sought to recover counsel fees and interest under sections 1009.106(a)(2) and 1009.107(3) of the former No-fault Act which were the predecessors to sections 1716 and 1797(b) of the MVFRL. The insured further asserted that the insurer had acted in bad faith and, therefore, he sought to recover punitive damages pursuant to 42 Pa.C.S. §8371. The trial court dismissed the bad faith claim on the grounds that the counsel fee and interest provisions of the No-fault Act were irreconcilably inconsistent with section 8371. In reversing the lower court, the Superior Court observed:

"The two statutes do not conflict. Attorney's fees are assessed under the No-fault Act if there is no foundation for a denial. Similarly, section 8371 provides for an award of attorney's fees for a bad faith insurance denial. Both statutes provide for the payment of interest on overdue claims—section 8371 requires that the claim be denied in 'bad faith' before interest accrues. Section 1009.107(3) requires the absence of reasonable foundation for the denial. The fact that both statutes provide the same remedy for similar actions can hardly be viewed as a conflict. Finally, the imposition of punitive damages in section 8371 does not conflict with any provision of the No-fault Act. . . .

"Section 1716 is a reenactment of the provisions of the No-fault Act at issue herein. . . .

"The allowance of punitive damages does not irreconcilably conflict with the allowance of attorney's fees and interest under the relevant provisions of the No-fault Act. Furthermore, [the insured] may be determined to be entitled to interest and attorney's fees under sections 1009.106 and 1009.107 of the No-fault Act since he supplied 'reasonable proof' of damages while not being en-

titled to damages under section 83-71 if no bad faith conduct is present. The fact that [the insured] has the potential for recovering under both sections is not a reason for dismissing the count under section 8371." *Id.* at 402-404, 625 A.2d at 667.

The *Okkerse* court further reasoned that to the extent that both statutes were found to be applicable and provided for different calculations of interest and counsel fees, section 8371 would prevail since it "was enacted later than the No-fault Act and [Act 6's] repealer section indicates that the General Assembly intended it to prevail over any inconsistent statutes." *Id.* at 404, 625 A.2d at 667.

Approximately four months later, another panel of the Superior Court considered the applicability of the bad faith statute to medical expense claims premised upon a PRO denial. In *Barnum v. State Farm Mut. Auto. Ins. Co.,* 430 Pa. Super. 488, 635 A.2d 155 (1993), *rev'd and remanded,* 539 Pa. 673, 652 A.2d 1319 (1994), the insured filed suit to recover unpaid medical bills, interest, counsel fees and punitive damages under section 8371 after his insurer refused to pay for certain treatment that a PRO had concluded was unnecessary. The lower court dismissed the action on the bases that (a) the insured had failed to exhaust his statutory remedy by neglecting to request reconsideration of the PRO denial and (b) section 8371 was inapplicable to peer review claims under the MVFRL. On appeal, the Superior Court cited with approval its earlier ruling in *Terminato v. Pennsylvania National Ins. Co.,* 422 Pa. Super. 92, 618 A.2d 1032 (1993), *rev'd,* 538 Pa. 60, 645 A.2d 1287 (1994), and opined that "an insured cannot proceed in the courts until reconsideration of an unfavorable PRO evaluation has

been sought." *Barnum,* 430 Pa. Super. at 494, 635 A.2d at 157. With respect to the applicability of section 8371, the *Barnum* court concluded that section 1797's "remedies clearly are at variance with and in conflict with the general remedies set forth in 42 Pa.C.S. §8371." *Id.* at 495, 635 A.2d at 158. Finding the two statutory provisions to be inharmonious, the court reasoned that "the specific provisions of 75 Pa.C.S. §1797 must be deemed an exception to the general remedy for bad faith contained in 42 Pa.C.S. §8371." *Id.* at 496, 635 A.2d at 159.

Less than eight months after the Superior Court ruling in *Barnum,* the Supreme Court of Pennsylvania decided the first issue addressed in *Barnum,* to wit, whether an insured is foreclosed from commencing litigation if [s]he fails to request reconsideration of a PRO denial. Noting that "[t]he doctrine of exhaustion of administrative remedies has no application to the peer review procedure[,]" the Supreme Court in *Terminato v. Pennsylvania National Ins. Co.,* 538 Pa. 60, 67, 645 A.2d 1287, 1290 (1994), held that an insured is not obligated to seek reconsideration of an adverse peer review decision under section 1797(b) of the MVFRL before instituting litigation to recover unpaid benefits. In support of its conclusion that PROs should not be afforded the same deference as administrative agencies, the *Terminato* court found that "the PRO does not have the characteristics of an independent body for which the legislature would seek judicial deference." *Id.* at 68, 645 A.2d at 1291.

Three months after the *Terminato* decision, the Third Circuit Court of Appeals followed the Superior Court ruling in *Barnum* and stated that "[w]e find [*Barnum's*] statutory construction to be convincing and predict the Pennsylvania Supreme Court would similarly rule on this

matter." *Gemini Physical Therapy & Rehab. Inc. v. State Farm Mut. Auto. Ins. Co.,* 40 F.3d 63, 67 (3d Cir. 1994). However, within two weeks of the *Gemini Physical Therapy* holding, the Supreme Court of Pennsylvania did just the contrary and reversed the Superior Court decision in *Barnum.* See *Barnum v. State Farm Mut. Auto. Ins. Co.,* 539 Pa. 673, 652 A.2d 1319 (1994).

### (D) *The Post-*Barnum *Era*

Following the Supreme Court reversal in *Barnum,* the Pennsylvania courts continue to reach conflicting interpretations of 42 Pa.C.S. §8371 and 75 Pa.C.S. §1797(b). Based upon the assumption that the Superior Court holding in *Barnum* has no precedential value, several courts have concluded that section 8371 and section 1797(b) are reconcilable in a peer review case since the bad faith statute addresses wrongful conduct by insurers in connection with peer review denials whereas the treble sanctions in section 1797(b) are confined to instances in which the insurer has *not* submitted medical bills to a PRO. See *Bacstrom v. State Farm Ins. Co.,* 40 D.&C.4th 330, 336-38 (Franklin Cty. 1998) (bad faith statute can be applied to "sham" peer reviews); *McIntyre v. State Farm Auto Ins. Co.,* 47 Cumb. 206, 210-11 (1998) (same); *Slaby v. Nationwide Ins.,* 39 D.&C.4th 98, 102 (Northum. Cty. 1997) ("public policy requires that the insurer can be held liable for damages under section 8371, including punitive damages, if they abuse the very [peer review] process that was enacted to shield them."); *Cool v. Dobrowalski,* 86 Luz. Reg. Reports 28, 30 (1996) ("[c]learly insureds must have an avenue open to them to protect against abuses in the use of peer review orga-

nizations" and "[i]t is clear to this court that section 8371 was enacted to address just those allegations detailed by plaintiff."); *Milton S. Hershey Medical Center v. State Farm Ins. Co.,* 13 Franklin Cty. L.J. 88, 90 (1994) ("[b]ecause there is no provision in 75 Pa.C.S. §1797 which would rectify bad faith on the part of an insurer once a claim is submitted to a PRO, this court sees no conflict between 75 Pa.C.S. §1797 and 42 Pa.C.S. §8371."). Those courts which have regarded section 8371 as applicable to certain peer review claims in which PROs have exceeded their statutory authority under section 1797(b) have reasoned that an insurer exposes itself to bad faith liability if it attempts to deny medical expense benefits on the basis of a PRO determination that the insured's injuries are not causally related to the covered accident. See *Hice v. Prudential Ins. Co.,* 34 D.&C.4th 97, 102 (Westmoreland Cty. 1997) ("[a]n insurance company cannot declare itself harmless by insulating itself from a bad faith claim, or by claiming it relied upon a peer finding which delves into matters of which the peer review organization has no statutory authority."); *Abbazio v. Nationwide Ins. Co.,* 34 D.&C.4th 385, 390 (Monroe Cty. 1996) (same). A few jurists have opined that while it is acceptable for a PRO to address causation under section 1797(b), insurers may nevertheless be subject to bad faith liability if they otherwise abuse the peer review process. See *e.g., Stavish v. Integon Ins.,* 87 Luz. Reg. Reports 65, 67 (1997) (although PRO properly decided causation, if the insurer deliberately selected that PRO "because of its history of high rate of denials for such review," it could be found liable for bad faith); *Murphy v. Progressive Ins. Co.,* 27 Mercer Cty. L.J. 373, 377-78 (1994) (section 8371 and section 1797 are not

irreconcilable if some misconduct is alleged, but an insurer does not commit misconduct by retaining a PRO to address causation).

A separate school of judicial thought still regards the MVFRL as the exclusive recourse for insureds aggrieved by peer reviews and deems section 8371 as subservient to section 1797(b) in that context. See *Grissinger v. Nationwide Mutual Ins. Co.*, 39 D.&C.4th 209, 214-16 (Dauph. Cty. 1998) (en banc); *Evans v. State Farm Ins. Co.*, 39 D.&C.4th 193, 200-201 (Elk Cty. 1997); *Kuropatwa v. State Farm Mutual Automobile Ins. Co.*, 29 D.&C.4th 494, 504 (Bucks Cty. 1995) *aff'd mem.*, 454 Pa. Super. 714, 685 A.2d 1050 (1996), *rev'd on other grounds*, 554 Pa. 456, 721 A.2d 1067 (1998) (rejecting contention that insurer engaged in bad faith by intentionally selecting a biased PRO with "a low percentile approval rate" for medical expense reviews). The federal courts likewise appear to be less than unanimous in their interpretation of the bad faith statute and the MVFRL.[1] However, the Lackawanna County courts have

---

1. In the Eastern District of Pennsylvania, although a few jurists have found after the Supreme Court reversal in *Barnum* that the bad faith provisions of section 8371 are applicable to peer review denials in which the PRO exceeds its statutory power by formulating a "causation" finding, see *Neun v. State Farm Ins. Co.*, 1996 WL 220980, *3 (E.D. Pa. 1996) (Hutton, J.) (because "the plaintiff has alleged that the defendant abused the peer review process by employing a PRO to determine causation, the bad faith claim in Count II is reconcilable with the remedies provided in section 1797"), *Schwartz v. State Farm Ins. Co.*, 1996 WL 189839, **5-8 (E.D. Pa. 1996) (Rendell, J.) (remarking that the legislature did not "believe that PROs should address causation issues and abuse the PRO process with impunity"), the majority of the remaining members of that court consider section 8371 to be irreconcilably inconsistent with section 1797(b). See *Panameno v.*

consistently held that section 1797(b) does not pre-empt a bad faith claim under section 8371 if the insurer denies payment of medical bills based upon a "causation" finding by a PRO. In *Lutkowski v. State Farm Mut. Auto. Ins. Co.,* 96 Lacka. Jur. 4 (1994), Judge S. John Cottone concluded that an "insurer may not use the PRO to determine whether or not the medical treatment was causally related to a particular accident" and permitted a bad faith claim to continue by remarking:

---

*State Farm Mut. Auto. Ins. Co.,* 1999 WL 320916, *1 (E.D. Pa. 1999) (Ludwig, J.); *Cardwell v. State Farm Mut. Auto. Ins. Co.,* 1999 WL 239363, *1 (E.D. Pa. 1999) (Buckwalter, J.); *Gargiulo v. Allstate Ins. Co.,* 1997 WL 551794, *1 (E.D. Pa. 1997) (Fullam, S.J.); *Seasor v. Liberty Mut. Ins. Co.,* 941 F. Supp. 488, 492-93 (E.D. Pa. 1996) (Broderick, J.); *Stewart v. State Farm Mut. Auto. Ins. Co.,* 1996 WL 153546, *2 (E.D. Pa. 1996) (Kelly, J.); *Grevy v. State Farm Ins. Companies,* 1996 WL 107851, **3-5 (E.D. Pa. 1996) (Reed, J.); *Cohen v. American Int'l Ins. Co.,* 1996 WL 103793, **3-4 (E.D. Pa. 1996) (Yohn, J.); *Mahnke v. Maryland Casualty Co.,* 1995 WL 574371, *2 (E.D. Pa. 1995) (Padova, J.); *Bennett v. State Farm Fire & Casualty Ins. Co.,* 890 F. Supp. 440, 443 (E.D. Pa. 1995) (Joyner, J.); *McGrane v. Liberty Mut. Ins. Co.,* 1994 WL 649353, *3 (E.D. Pa. 1994) (Bechtle, J.); The Middle District courts have been more evenly divided with respect to their construction of sections 8371 and 1797(b). Compare *Bubb v. Nationwide Mut. Ins. Co.,* civil no. 1:CV-99-1852 (M.D. Pa. August 10, 2000) (Rambo, J.) (allowing bad faith claim to continue on the basis that "section 1797 does not permit the 'peer review' to make determinations on causation."), and *Garvey v. State Farm Ins. Co.,* civil no. 3:99-CV-1081 (M.D. Pa. October 21, 1999) (Munley, J.) (same) with *Nationwide Ins. Co. v. Agway Ins. Co.,* 845 F. Supp. 252, 257 (M.D. Pa. 1994) (McClure, J.), *rev'd mem.,* 77 F.3d 463 (3d Cir. 1996) (a plaintiff may not seek punitive damages under section 8371 for denial of medical benefits under an auto insurance contract). The only reported decision from the Western District of Pennsylvania predates *Barnum* and applied the bad faith statute to peer review denials predicated upon a "causation" adjudication. See *Grove, supra.*

"In closing we believe that plaintiff should be allowed to proceed under both section 8371 and the MVFRL. Disallowing plaintiff to go forward under section 8371 because her medical claims were given to a PRO for review, would remove from the courts its responsibility of providing the insured (and medical service professionals) a forum for bad faith claims whenever the PRO system is involved—even if the PRO system is invoked improperly. The net effect of this would be that the PRO system would serve as an umbrella under which insurance companies could always be insulated from 8371 sanctions. Section 8371 is designed to protect the insured from bad faith on the part of the insurance providers irrespective of whether or not the bad faith action occurs after the insurance company chooses to use the PRO system." *Id.* at 7, 8. Accord *Pierce v. State Farm Ins. Co.,* 27 D.&C.4th 464, 469-70 (Lacka. Cty. 1994) (Cottone, J.).

Judge Cottone's reasoning has been followed on each occasion that a Lackawanna County court has considered this issue. See *DeFazio v. Nationwide Mutual Ins. Co.,* 35 D.&C.4th 221, 226 (Lacka. Cty. 1997) (Munley, J.); *Burgette v. Selective Ins. Co.,* 38 D.&C.4th 362, 365-66 (Lacka. Cty. 1998) (Corbett, J.); *Pisarchick v. Progressive Companies,* 102 Lacka. Jur. 491, 497 (2001) (Minora, J.). For the reasons set forth in section II (E) below, we will do the same.

### (E) *Causation Denials by PROs*

The MVFRL requires insurers who sell motor vehicle insurance policies in Pennsylvania to provide medical benefits coverage "with respect to injury arising out of the maintenance or use of a motor vehicle. . . ." 75 Pa.C.S.

§1712. The "maintenance and use" requirement in section 1712 was enacted in 1984 and governs the question of whether the injury suffered is causally related to the use of a motor vehicle. See *Huber v. Erie Ins. Exchange,* 402 Pa. Super. 443, 446-47, 587 A.2d 333, 334-35 (1991). Neither the original version of section 1797 of the MVFRL nor the 1990 amendments thereto address the issue of causation. Section 1797(b)(1) merely empowers insurers to retain PROs to conduct evaluations "for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." Moreover, the regulations which have been promulgated by the Insurance Department to implement the peer review process further clarify the scope of a PRO's jurisdiction and distinctly state that "[a] PRO has the authority to evaluate the reasonableness and medical necessity of care, and the professional standards of performance including the appropriateness of the setting where the care is rendered, and the appropriateness of the delivery of the care rendered." 31 Pa. Code §69.51.

Hence, the clear language of the MVFRL and applicable regulations confine a PRO's authority to matters involving the reasonableness, appropriateness and necessity of treatment. Nothing in the Act 6 amendments to section 1797 or the Insurance Department regulations suggests that PROs are vested with the discretion to determine whether an injury is causally related to a particular accident. Rather, questions of causation are addressed in section 1712 which does not regulate or govern the authority of PROs.

In fact, insurers themselves have acknowledged that they may be chargeable with bad faith if they deny coverage based upon a PRO report which concludes that injuries and treatment are not causally related to the covered accident. See *State Farm Mutual Automobile Ins. Co. v. Veltri,* 424 Pa. Super. 612, 614 n.2, 623 A.2d 849, 850 n.2 (1993) ("[b]ecause State Farm interprets the peer review medical report as having found that treatment was not related to appellee's automobile accident, it fears that reliance on this report would be an act of bad faith."). However, in *Bodtke v. State Farm Mutual Automobile Ins. Co.,* 432 Pa. Super. 31, 637 A.2d 648 (1994), *rev'd on other grounds,* 540 Pa. 540, 659 A.2d 541 (1995), the majority opinion indicated that causation denials are appropriate. In *Bodtke,* the Superior Court affirmed the dismissal of a first-party benefits action on the grounds that the insured had failed to exhaust her administrative remedy by seeking reconsideration of the PRO denial. Although the majority found it "not necessary to entertain [insured's] second claim that the [causation] decision of the PRO was outside the scope of section 1797(b)," it nonetheless quoted with approval the lower court's observation "that [the PRO's determination that] certain injuries treated were not related to the accident is simply another way of stating that they were not medically necessary." *Id.* at 34, 637 A.2d at 649. In her concurring opinion, Judge Kate Ford Elliott disagreed with the majority's dictum regarding the causation determination and stated:

"Section 1797(b)(1) specifically provides that the evaluation of a PRO 'shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of per-

formance and are medically necessary.' I do not equate either of these functions with causation and coverage under an insurance policy. Whether treatment is medically necessary for a specified injury is an entirely different issue from whether that injury is causally related to the accident and therefore covered under the applicable policy of insurance. On this latter issue, I believe appellant is still entitled to her day in court.

"Any further discussion of this issue would be premature at this stage, given that the matter was only addressed in dictum by the majority. The scope of the language of section 1797(a) is certainly an issue that this court will soon have to address once the·proper procedural steps are taken to bring the issue squarely before us." *Id.* at 35-36, 637 A.2d at 650 (Ford Elliott, J., concurring).

Any precedential value ascribable to the dictum in *Bodtke* was later negated by the Supreme Court reversal based upon its decision in *Terminato.* See *Bodtke v. State Farm Mut. Auto. Ins. Co.,* 540 Pa. 540, 659 A.2d 541 (1995). On two subsequent occasions, the Supreme Court has declined the opportunity to consider the propriety of a causation determination by a PRO. See *Kuropatwa, supra* at 462 n.4, 721 A.2d at 1070 n.4 ("*Kuropatwa* also asserts that a peer review organization is not permitted under the MVFRL to determine the causation of the injuries of an insured. This issue has not been addressed by this court, and will not be addressed in this appeal because of the limited grant of Kuropatwa's petition for allowance of appeal."); *Terminato, supra* at 68 n.1, 645 A.2d at 1291 n.1 ("*Terminato* has also challenged whether a PRO is authorized to review treatment for its causal connection to an automobile accident. We need not address the issue at this time, however, because our resolu-

tion of the issue of exhaustion of statutory remedies necessitates a remand to the common pleas court."). Although the Superior Court has yet to revisit this issue, several trial courts and commentators have concluded post-*Bodtke/Barnum* that an insurer exposes itself to bad faith liability if it rejects a medical expense benefit claim based upon a "causation" assessment by a PRO. See *Schwartz, supra* at n.5; *Taylor v. Nationwide Ins. Co.,* 35 D.&C.4th 101, 109-10 (Allegheny Cty. 1997) (holding "that there are no appellate court rulings that are inconsistent with my ruling in *Knox v. Worldwide Ins. Group* permitting a section 8371 claim based on the denial of first-party benefit claims in those situations which the insurance company has not obtained a PRO evaluation supporting a denial of coverage on the ground that the treatment was not medically necessary or that it failed to conform to accepted professional standards."); Erhard, G.D., *"The Peer Review Masquerade: Disguising Health-Care Rationing Under the Pennsylvania Auto Insurance Law,"* 57 U. Pitt. L. Rev. 959, 973-77 (1996); Oberdorf, T.M., *"Bad Faith Insurance Litigation in Pennsylvania: Recurring Issues Under Section 8371,"* 33 Duq. L. Rev. 451, 470 n.134 (1995).

The statutes, regulations and better reasoned case law discussed above reflect that Olsofsky should be entitled to pursue certain remedies under the MVFRL and the bad faith statute as a result of Progressive's denial of medical expense benefits based upon a causation determination by a PRO. Since sections 1716 and 1798(b) of the MVFRL and 42 Pa.C.S. §8371 sanction different types of insurer conduct and prescribe varying forms of relief, they are reconcilable and can both be applied in this case. See *Okkerse, supra; Seeger, supra.* With re-

spect to a denial of benefits predicated upon a peer review, if the insurer legitimately rejects a claim in reliance upon a PRO finding that the treatment was not reasonable or medically necessary, a fatal conflict would exist between section 1797(b) and section 8371 and the more specific provisions of section 1797(b) would prevail. However, if the PRO exceeds its statutory and regulatory authority by formulating a causation finding, the insurer may be subject to bad faith under section 8371 if it bases its denial upon such an unlawful review.

If the legislature had intended to vest PROs with the capacity to address causation issues, it would have expressly included that authority in section 1797(b)(1) where the PRO's powers are delineated. Instead, the General Assembly inserted "causation" language only in section 1712 of the MVFRL dealing with injuries "arising out of the maintenance or use of a motor vehicle." The judiciary should not attempt to assume the role of the legislature by inserting language into a statute which the General Assembly has seen fit to exclude. See *Key Savings and Loan Association v. Louis John Inc.,* 379 Pa. Super. 226, 232, 549 A.2d 988, 991 (1988), *app. denied,* 523 Pa. 632, 564 A.2d 1260 (1989), *app. dismissed,* 529 Pa. 573, 605 A.2d 1223 (1992) (courts are without authority to insert a word into a statutory provision where the legislature has failed to supply it).

An insurer is not without recourse if it wishes to challenge the causal connection between an accident and an insured's injuries and treatment under the "maintenance or use" requirement of section 1712. In that event, the insurer may seek to have the insured submit to a "mental or physical examination" under section 1796(a) of the MVFRL. See *State Farm Ins. Companies v. Hunt,* 390

Pa. Super. 620, 624, 569 A.2d 365, 367 (1990) (finding that medical examination was warranted under section 1796 since it would "substantially aid the insurer in evaluating [the insured's] claim, in determining the nature of her injuries, and in assessing the need for continuing treatment."). If the insured refuses to submit to an examination voluntarily, the insurer may petition the court to order such an examination "for good cause shown."[2] See *State Farm Ins. Companies v. Swantner,* 406 Pa. Super. 235, 245, 594 A.2d 316, 321 (1991), *app. denied,* 530 Pa. 633, 606 A.2d 903 (1992) (holding that the "for good cause shown" requirement "does not relate to the existence of a controversy but to the continued necessity for treatment and requirement of payment" such that a "motion [under section 1796] may arise out of a lack of knowledge rather than a controversy . . . ."). Indeed, it is difficult to conceive how an insurer could conclude, for example, that an insured's symptoms are attributable to a pre-existing degenerative condition rather than accident-related trauma based solely upon a review of medical records and *without* the benefit of a physical examination of the insured. Cf. *Elliott v. State Farm Mut. Auto. Ins. Co.,* 786 F. Supp. 487, 490 (E.D. Pa. 1992) (allegation that insurer denied first-party benefits without a voluntary or court-ordered physical examination is sufficient "to state a cognizable claim for unreasonable de-

---

2. If the insurance policy between the insurer and insured requires the insured to "[s]ubmit to [a] physical examination by a physician of [the insurer's] choice," the first-party benefits insurer does not have to establish "good cause" under section 1796 as a condition precedent to compelling the insured to undergo a medical examination. *Fleming v. CNA Ins. Companies,* 409 Pa. Super. 285, 288, 597 A.2d 1206, 1208 (1991). (emphasis omitted)

nial of benefits."). By declining to grant PROs the authority to make decisions regarding causation, the legislature apparently recognized that while the necessity and reasonableness of medical treatment can be adequately addressed by a mere review of medical records, a "causation" determination can only be accomplished by way of an actual examination of the patient/insured. Therefore, the most logical interpretation of the MVFRL is that PROs are not empowered to make "causation" assessments and that insurers may be subject to bad faith liability under 42 Pa.C.S. §8371 for denying first-party benefit claims based upon a PRO's causation determination.

### (F) *"Medical Record Review"*

In apparent recognition of the fact that PROs cannot address causation, Progressive contends that it cannot be held accountable for punitive damages under section 8371 *or* treble damages pursuant to section 1797(b) since its causation finding was premised upon a "medical record review" rather than a peer review.[3] Progressive has not cited any case law or other authority in support of its assertion that a "medical record review" and a "peer review" are mutually exclusive procedures. Our analy-

---

3. Progressive's argument is internally inconsistent in this regard. Section 1797(b)(4) exposes an insurer to treble damages for wanton conduct if the reasonableness or necessity of medical treatment has *not* been "challenged before a PRO." Thus, accepting Progressive's position and assuming arguendo that its denial was predicated upon a "medical record review" which cannot be regarded as a "peer review," then Progressive has refused to pay for treatment without first challenging its reasonableness or necessity before a PRO. In that event, Progressive would, in fact, be subject to treble damages under section 1797(b)(4).

sis of the applicable law leads us to conclude that a "medical record review" and a "peer review" are one in the same.

When conducting its initial determination, a PRO obtains and reviews the insured's medical records and bills to evaluate the reasonableness and necessity of care. See 31 Pa. Code §69.52(c). If an insured, insurer or health care provider requests reconsideration of an initial PRO determination, the reconsideration is likewise "based upon the information that led to the initial determination, new information found in medical records or additional evidence submitted by the requesting party." 31 Pa. Code §69.52(k). Additionally, in every appellate decision involving PRO denials, the peer review has been based solely upon the insured's medical records and bills. See *e.g., Frey v. State Farm Mutual Automobile Ins. Co.,* 429 Pa. Super. 425, 428, 632 A.2d 930, 931 (1993) ("[a] peer review organization subsequently reviewed Frey's medical records and bills and issued a report on February 6, 1992."); *Veltri, supra* at 613-14, 623 A.2d at 849 ("State Farm, then submitted [the] bills and corresponding medical records to the Tri-State Rehabilitation Group for a peer review pursuant to 75 Pa.C.S. §1797(b)."). In aptly describing the mechanics of a peer review, one commentator has remarked:

"It is critical in the understanding of this process to note that the peer reviewer does not personally examine the patient. Rather, the peer reviewer conducts a paper review, *i.e.,* he reviews only the provider's records and documentation involving the patient." *The Peer Review Masquerade,* 57 U. Pitt. L. Rev. at 960 n.3.

There is no reported precedent addressing the "medical record review"-"peer review" dichotomy proffered by Progressive. However, in an unreported memoran-

dum opinion, a federal court flatly rejected the argument currently being advanced by Progressive. In *Bubb v. Nationwide Mut. Ins. Co.,* civil no. 1:CV-99-1852 (M.D. Pa. August 10, 2000) (Rambo, J.), the insurer sought to have an insured's bad faith claim dismissed and asserted that it had conducted a "records review" as opposed to a "peer review." *Id.* at p. 2. In refusing to dismiss the bad faith claim, U.S. District Judge Sylvia H. Rambo concluded:

"Nationwide asserts that the 'records review' conducted by the same doctor is a reasonable basis for denying coverage. However, Nationwide fails to present any evidence that this 'records review' was in any way different from the 'peer review' or to present any legal justification why a 'records review' should present a reasonable basis to deny coverage based on causation while a 'peer review' pursuant to section 1797 cannot. Instead, Nationwide merely offers the court a conclusory unsupported statement: 'The insurer retains the right to use the procedures, which pre-dated the Motor Vehicle Responsibility Act, such as a records review, to determine if the medical bills are for treatment necessitated by an injury arising from the motor vehicle accident.' (Def.'s mem. of law at 5.) The court finds such an unsupported statement wholly unpersuasive.

"A jury could reasonably find that the 'records review' conducted by Dr. Kenny which found that the automobile accident did not cause Bubb's TMJ dysfunction was not a reasonable basis for denying coverage. Dr. Kenny did not conduct a medical exam of Bubb, but made his causation determination solely by reviewing the medical records. This 'records review' is therefore based on the same materials as the 'peer review' and section 1797 does not permit the 'peer review' to make determinations on causation." *Id.* at pp. 5-6.

We agree with the *Bubb* court's analysis that a "peer review" and so-called "medical record review" have identical features and purposes. Progressive's semantical argument is simply a distinction without a difference and regardless of the label that Progressive attempts to affix to its denial in this case, a "medical record review" is nothing more than a "peer review" and vice versa. Progressive simply cannot utilize a peer review of medical records as a basis for denying benefits on the grounds that the injury is not related to the accident.

## CONCLUSION

Based upon the foregoing, we find that the provisions of 42 Pa.C.S. §8371 do not conflict with 75 Pa.C.S. §§1716 and 1798(b) as those statutes address different categories of insurer conduct and provide compatible remedies. Similarly, we conclude that section 8371 and section 1797(b) are reconcilable in those instances in which an insurer has denied first-party benefits in reliance upon a "causation" determination by a PRO. However, since we regard Progressive's purported "medical record review" as a "peer review," Olsofsky's claim for treble damages must be stricken as treble damages are only available under section 1797(b)(4) if the insurer has not challenged an insured's medical bills before a PRO. An appropriate order will follow.[4]

---

4. With respect to Progressive's contention that this action should be dismissed since Olsofsky sued "Progressive Insurance Company" rather than "Progressive Northern Insurance Company," Olsofsky will be directed to amend the complaint to correct Progressive's designation as "Progressive Northern Insurance Company." See *Paulish v. Bakaitis,* 442 Pa. 434, 441, 275 A.2d 318, 321 (1971) (permitting amendment to change the named defendant from Bart Bertocci Inc. to

## ORDER

And now, August 23, 2001, upon consideration of the preliminary objections of defendant, Progressive Insurance Company, the memoranda of law submitted by the parties, and the oral argument of counsel on August 1, 2001, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Within 20 days of the date of this order, plaintiff shall file an amended complaint in response to defendant's preliminary objections asserting a lack of jurisdiction and shall duly amend the complaint to change the designation of the defendant from "Progressive Insurance Company" to "Progressive Northern Insurance Company;"

(2) The preliminary objections in the nature of a demurrer to plaintiff's claims for interest, counsel fees and punitive damages under 42 Pa.C.S. §8371 and 75 Pa.C.S. §§1716 and 1798(b) are denied; and

(3) The preliminary objections in the nature of a demurrer to plaintiff's claims for interest, counsel fees and treble damages pursuant to 75 Pa.C.S. §1797(b)(4), (6) are granted since those remedies are available only if the insurer has not challenged medical treatment and bills before a peer review organization.

---

the partnership Bertocci Construction Company even though the statute of limitations had expired); *Powell v. Sutliff,* 410 Pa. 436, 438-39, 189 A.2d 864, 865 (1963) (allowing complaint to be amended to substitute "Sutliff Chevrolet, a corporation" as the party defendant in place of "Ellis Sutliff and Leo E. Sutliff, individually and as partners of Sutliff Chevrolet" after the limitations period had elapsed). Accord, *Richards v. May Dept. Stores,* 100 Lacka. Jur. 334, 341 (1999).