J-S73001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.G.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| E.H. & E.H., | |
| Appellees | No. 1265 MDA 2014 |

Appeal from the Order Entered June 24, 2014
In the Court of Common Pleas of York County
Civil Division at No(s): 2013-FC-1909-03

BEFORE:  BOWES, WECHT, and MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 08, 2014**

J.G.B. ("Grandfather") appeals the order sustaining the preliminary objections filed by E.H. ("Father") and E.H. ("Mother") (collectively "Parents") to his custody complaint concerning his grandson, G.B. We affirm.

G.B. is six years old.  His birth mother, K.B. ("Birth Mother"), died on February 13, 2013.  Parents, Birth Mother's sister and brother-in-law, adopted G.B. during August of 2013.[1]  G.B. resides with Parents and their two genetic children as a cohesive nuclear family in Hanover, Pennsylvania. Prior to her death, Birth Mother and G.B. resided for approximately thirty-six months with Grandfather in Mechanicsburg, Pennsylvania.  Immediately

_____

[1]  The orphans' court terminated the birth father's parental rights on June 11, 2013.

after Birth Mother died, G.B. and Grandfather moved to Parents' home. Grandfather returned to his home in Mechanicsburg two months later.

During the August 2013 adoption hearing, Grandfather testified that Mother and Father were appropriate parents; however, on October 22, 2013, while Parents' adoption was pending, he filed a complaint in the family division of the York County Court of Common Pleas wherein he requested shared legal custody and shared physical custody of G.B.[2] Grandfather withdrew this complaint approximately two weeks later. On April 17, 2014, subsequent to the entry of the adoption decree, Grandfather filed a second custody complaint against Parents. The pleading, which did not invoke any statutory grounds for standing or assert any facts that specifically triggered it, requested that the court award him shared legal and physical custody of G.B.

Parents countered the custody complaint with preliminary objections, as amended on May 7, 2014, challenging Grandfather's standing to pursue shared legal and physical custody of their son. Specifically, Parents asserted that pursuant to § 5326 of the Child Custody Act, the adoption decree vitiated any right to standing that Grandfather had garnered prior to the

---

[2] Grandfather had previously filed a custody complaint against the birth father at a different civil action number, but that complaint was dismissed after the orphans' court terminated birth father's parental rights on June 11, 2013.

adoption.[3]  Parents conceded that G.B.'s adoption into their family did not alter Grandfather's status as the child's grandparent since they are Grandfather's daughter and son-in-law.  However, they argued that the adoption decree reset the legal framework and Grandfather was required to establish standing to pursue custody of his grandson in the context of the current family dynamic.  They continued that under the existing scenario, Grandfather could not establish standing under 23 Pa.C.S. §§ 5324 and 5325, two provisions of the Child Custody Law that extend standing to grandparents and great-grandparents in specific situations outlined therein.  In sum, Parents argued that since Grandfather failed to invoke, much less establish, his right to standing pursuant to the statute, his complaint should be dismissed with prejudice.  Grandfather did not respond to Parents' preliminary objections.

_____

[3]  Section 5326 provides as follows:

> **Effect of adoption**
>
> Any rights to seek physical custody or legal custody rights and any custody rights that have been granted under section 5324 (relating to standing for any form of physical custody or legal custody) or 5325 (relating to standing for partial physical custody and supervised physical custody) to a grandparent or great-grandparent prior to the adoption of the child by an individual other than a stepparent, grandparent or great-grandparent shall be automatically terminated upon such adoption.

On June 24, 2014, the trial court held an evidentiary hearing to address Parents' preliminary objections. At the outset of the hearing, Grandfather specifically invoked § 5324(3)(i)-(iii)(B) as the basis for standing in the custody litigation and he stated his intention to concentrate his evidence on that provision. N.T., 6/24/14, at 4. Additionally, Grandfather sought to amend his complaint to forego his claim to legal custody. *Id*. at 4-5. Grandfather testified, and he presented one witness, George Margetas, Esquire, who knew Mother socially and observed her consume alcohol in a public setting. Mother and Father testified on their own behalf. Following the hearing, the trial court dictated a comprehensive order from the bench wherein it sustained the preliminary objections and dismissed the custody complaint.[4] This timely appeal followed.

Grandfather leveled one issue in his statement of errors complained of on appeal,[5] which he iterates in his brief as follows: "Did the trial court err in sustaining the preliminary objections where [Grandfather] presented

_____

[4] On July 1, 2014, the trial court entered the written order on the docket and issued notice required under Pa.R.C.P. 236(a)(2).

[5] Grandfather failed to file a statement of errors complained of on appeal simultaneous with his notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). However, since Grandfather complied with the trial court's order directing him to file the Rule 1925(b) statement, the misstep was harmless. *D.M. v. V.B.*, 87 A.3d 323, 326-27 (Pa.Super. 2014) ("As Appellant has since rectified the [noncompliance with Rule 1925(a)(2)(i)], we see no prejudice to any party resulting from Appellant's failure to adhere to the procedural rules in this instance, and we shall proceed to review the merits of the appeal.").

evidence that Adoptive Mother had a substance abuse issue?"  Grandfather's brief at 4.

We review the trial court's decision for an abuse of discretion.  *See In re B.L.J.*, 938 A.2d 1068, 1071 (Pa. Super. 2007) ("This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion.");  *Kellogg v. Kellogg*, 646 A.2d 1246, 1250 (Pa.Super. 1994) ("Once the trial court determination is made [as to standing], it will be reviewed by this court in the same manner that we review any such determination, that is, under an abuse of discretion or error of law standard.").  We recently reiterated the pertinent principles as follows:

> The concept of standing, an element of justifiability, is a fundamental one in our jurisprudence: no matter will be adjudicated by our courts unless it is brought by a party aggrieved in that his or her rights have been invaded or infringed by the matter complained of.  The purpose of this rule is to ensure that cases are presented to the court by one having a genuine, and not merely a theoretical, interest in the matter. Thus the traditional test for standing is that the proponent of the action must have a direct, substantial and immediate interest in the matter at hand.
>
> . . . .
>
> In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

***D.G. v. D.B.***, 91 A.3d 706 (Pa.Super. 2014) (quoting ***J.A.L. v. E.P.H.***, 682 A.2d 1314, 1318 (1996)) (internal quotations and citations omitted).

Herein, Grandfather's assertion of standing implicates the application of 23 Pa.C.S. § 5324(3), regarding standing for any form of physical custody or legal custody. That provision provides, in pertinent part as follows:

> The following individuals may file an action under this chapter for any form of physical custody or legal custody:
>
> . . . .
>
> (3) A grandparent of the child who is not in loco parentis to the child:
>
> > (i) whose relationship with the child began either with the consent of a parent of the child or under a court order;
> >
> > (ii) who assumes or is willing to assume responsibility for the child; and
> >
> > (iii) when one of the following conditions is met:
> >
> > > (A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);
> > >
> > > (B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or
> > >
> > > (C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324(3).

Grandfather invoked standing pursuant to subsection (3)(i)-(iii)(B) concerning the parental abuse, neglect, drug or alcohol abuse, or incapacity. Thus, Grandfather had the burden of proving by clear and convincing evidence that, *inter alia*, G.B. was at substantial risk due to Parents' drug or alcohol abuse.[6]  **Kellogg**, **supra** at 1249-1250 ("a third party seeking custody must show more than a passing interest in the child. The petitioner, in order to be awarded standing, must prove by clear and convincing evidence that he or she has shown a sustained, substantial and sincere interest in the welfare of the child.").  For the reasons discussed below, we find that Grandfather was unable to satisfy his burden of proof.

Grandfather argues that he adduced adequate evidence to support his standing claim based upon Mother's alleged substance abuse.  In sum, he maintains that, "it is clear from the record that he could prove facts [, ostensibly during the custody trial,] legally sufficient to establish a right to relief."  Grandfather's brief at 10.  He opines that even to the extent that Mother has not imbibed in G.B.'s presence, her drinking habits would have a negative impact on the child, and he speculates that, if left untreated, Mother's substance abuse could place the child at substantial risk.

---

[6]  While Grandfather does not address the other components of § 5324(3), Parents assert that, in addition to failing to prove the requisite substantial risk of harm, Grandfather could not establish that he was willing to assume responsibility for the child pursuant to subsection (3)(ii).  As we affirm the trial court's determination that Grandfather failed to establish that G.B. was substantially at risk, we do not address this aspect of Parents' argument.

Parents counter that, notwithstanding Grandfather's protestation that he would be able to prove his right to relief at trial, the trial court provided Father the opportunity to establish standing under § 5324(3)(i)-(iii)(B) during the evidentiary hearing, and Grandfather failed to satisfy the threshold requirement of standing under the statutory provision that he specifically invoked. Parents' brief at 7. They highlight that Grandfather adduced scant evidence to demonstrate either that he was willing to assume responsibility for G.B. or that the child was at substantial risk of harm. Additionally, Parents assail whether Grandfather's purported concern over his grandson's safety is genuine. They point out that, despite Grandfather's apparent concern for G.B.'s safety, he inexplicably failed to express any concern for G.B.'s cousins/adoptive brothers, whom presumably would be subject to the identical risk of harm from Mother's alleged substance abuse.

In sustaining Parents' challenge to Grandfather's standing, the trial court found that Grandfather failed to establish that G.B. was substantially at risk due to drug or alcohol abuse. The trial court reasoned, "The testimony indicated that there were occasions where [Mother] had drank to excess, but there's been no testimony at all that at any time was a child at risk due to her drinking." N.T., 6/24/14, 73. It continued, "[m]oreover, we find her credible in her testimony that she has not drank any significant amounts since the time of the adoption." *Id*. As discussed below, the certified record supports the trial court's determination.

During the evidentiary hearing, Grandfather testified that while he briefly resided with G.B., Parents, and their birth children prior to the child's adoption, he witnessed Mother drink a glass of wine as early as 9:00 a.m. *Id*. at 35-36. He further relayed that Mother ignored his concerns about drinking so early. *Id*. at 36. Grandfather also testified that, during that brief period, he witnessed Mother take medication while drinking. *Id*. at 36-37. Additionally, he outlined an isolated incident that he believed exemplified her anger issues. *Id*. at 37. As it relates to Mother's prior history with alcohol, Grandfather testified that Mother drank to excess as a teenager and boasted about drinking and driving. *Id*. at 39-40. Although Grandfather characterized Mother as an alcoholic, he did not have any concerns about Father's fitness to care for G.B. *Id*. at 39. During cross-examination, Grandfather conceded that he has not seen Mother drink since October 7, 2013, the date of their last interaction. *Id*. at 41.

Grandfather also called George Margetas, Esquire, as a witness. Attorney Margetas testified that he dated Birth Mother for approximately eight months during 2013. *Id*. at 6-7. Throughout that period, he interacted with Mother and observed her drink socially. *Id*. at 6-7. He continued that he witnessed her drink to excess "a couple of times" during that period. *Id*. at 7. In the course of the trial court's examination, Attorney Margetas further elucidated that he knew Mother for approximately seven years, and stated that when they both were younger, it was common

for people in their circle of friends to drink excessively. *Id*. at 10. However, he reiterated that in their recent history since then, he had only seen her intoxicated twice. *Id*. at 10-11.

Parents countered Grandfather's evidence with opposing testimony establishing that neither parent had substance abuse issues. First, Mother testified that she has three children, including G.B., who is her middle child. *Id*. at 15. She resides with Father in an intact marriage. *Id*. They have never been separated or petitioned for divorce. *Id*.

Mother denied that she had a drinking problem or that she has sought treatment for alcoholism. *Id*. at 21. She stated that she consumed approximately one glass of wine per week with dinner. *Id*. at 62-63. She specifically denied drinking at 9:00 a.m. *Id*. at 64. Moreover, she noted that the observations that Attorney Margetas testified about occurred during 2012, while she and Birth Mother went dancing at a night club. *Id*. at 21. She further clarified that Father drove them home when the evening was over. *Id*.

Mother explained that, as a nurse at York Hospital Trauma Center, she works three twelve-hour days per week. *Id*. at 63. The shift alternates weekly between daylight and overnight periods. *Id*. She is subject to random drug screens, the most recent occurring three or four months prior to the hearing. *Id*. at 28-29. Mother has never been treated for drug or alcohol abuse. *Id*. at 28. Finally, Mother acknowledged that she is

prescribed Zoloft for depression, and takes Alzapam and Ambien as necessary for anxiety and insomnia respectively. *Id*. at 26-27. She highlighted that her physician advised her not to consume alcohol when she takes her medication. *Id*. at 28.

Father also testified. In sum, he stated that as a seventeen-year veteran of the United States Department of Defense and a member of a U.S. Army Reserve unit, he was subject to drug testing, which he passed on every occasion. *Id*. at 30. Furthermore, he testified that Mother did not have issues with drugs or alcohol. *Id*.

The foregoing evidence supports the trial court's decision to sustain Parents' preliminary objections to Grandfather's custody complaint. Grandfather declined to plead the basis of his standing in the underlying custody complaint or in a response to Parents' preliminary objections, and when granted an evidentiary hearing for the specific purpose of determining standing, he failed to adduce clear and convincing evidence supporting his claim that Mother's alcohol and drug abuse placed G.B. "substantially at risk." At most, Grandfather proffered uncontested evidence that Mother drank alcohol to excess as a teenager, he last observed her drink on October 7, 2013, and that she and Birth Mother imbibed during 2012. Parents contested Grandfather's remaining testimony, including his assertion that Mother once drank wine as early as 9:00 a.m., and upon hearing the countervailing evidence, the trial court made a specific credibility finding in

favor of Parents and against Grandfather. As the certified record supports the trial court's determination that Grandfather's invocation of § 5324(3) was unavailing, we will not disturb it.

For all of the foregoing reasons, we affirm the order sustaining Parents' preliminary objections to Grandfather's custody complaint.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/8/2014